372 P.2d 122

**Elizabeth J. SPROLES, Plaintiff-Appellant,**

**v.**

**George McDONALD and Laura McDonald, husband and wife, Defendants-Appellees.**

**No. 6840.**

Supreme Court of New Mexico.

June 5, 1962.

C. C. Chase, Jr., Alamogordo, for appellant.

H. Elfred Jones, Carrizozo, E. Forrest Sanders, William W. Bivins, Las Cruces, for appellees.

PER CURIAM.

Upon consideration of Motion for Rehearing, the original opinion heretofore filed is withdrawn and the following is substituted therefor:

MOISE, Justice.

Plaintiff-appellant, together with her husband, homesteaded the West half of Sec. 33, Twp. 8 S., Rge. 9 E., N.M.P.M., in 1915 and received a patent thereon in 1919. Appellant's mother homesteaded the East half of the section in 1917 and received her patent in 1923. Appellant and her husband subsequently acquired the East half of the section. Appellant's husband is now deceased, and she is the sole owner of the section which contains 640 acres according to the official survey.

In 1915, when entry was made, there was in existence a fence from north to south along the west side of the property, and appellant's husband constructed a fence on the northern and southern sides of the section. Appellant's dwelling and corrals were constructed approximately 200 feet from the fence line on the west.

Section 32, Twp. 8 S., Rge. 9 E., N.M.P.M., lying directly to the west of Sec. 33, and the W½ SW¼ of Sec. 28, to the north, are owned by the State of New Mexico, and defendants-appellees hold an institutional lease thereon for grazing purposes from the commissioner of public lands. In addition, appellees own the E½ SW¼ and SE¼ of Sec. 28. Accordingly, their holdings border Sec. 33 on the north and west.

In December, 1958, appellant instituted this suit alleging her ownership of Sec. 33, the fact of the fences being present for many years, and that appellees threaten to trespass on her property by constructing a fence some 420 feet to the east of the existing fence; that this would result in a continuing trespass and in a multiplicity of suits for which appellant has no speedy, sure and adequate remedy at law, and praying that the court enjoin such trespass on plaintiff's lands and the building of the fence.

Appellees, by their second amended answer, generally denied the allegations of the complaint and then filed a counter-claim in which they assert their ownership in Sec. 28 as above set out, and their right to possession for some 15 years of the state lands in Secs. 28 and 32. They further allege that the north-south fence line as it has existed is some 420 feet inside Sec. 32, and that the east-west fence line is inside Sec. 28 some 34 feet on the west side and some 60 feet on the east side; that by virtue of these facts appellant is trespassing on property to which appellees are entitled to possession; that appellees will be irreparably injured if the trespass is permitted to continue; and they seek an injunction against the continued use of the land and trespassing by appellant, and that she be required to remove her fence and other improvements, and that appellees be permitted to place their fence on the true line.

The case was tried to the court without a jury, and the court found the facts of entry and occupancy as hereinabove set forth, and that the original survey of 1878, together with a resurvey in 1937, and another made pursuant to court order in 1959, all showed the same correct lines, and also found that the fence lines encroached as claimed by appellees, and concluded that so far as the fence location and encroachment between E½ SW¼ and SE¼ of Sec. 28 owned by appellees and Sec. 33, the fence should remain unchanged. However, it concluded that the fence should be moved some 420 feet east on the east side of Sec. 32 owned by the State, and some 30 feet south on the south side of S½ SW¼ of Sec. 28, also owned by the State.

The commissioner of public lands refused to intervene or participate in the action although advised concerning it.

Appellant appeals claiming four errors committed by the court in finding the boundaries as it did; in concluding the fences should be moved to conform to the boundaries as found; in failing to conclude that appellees were not the real parties in interest; and in failing to conclude that it was without jurisdiction to determine the issues raised by the counter-claim, the argument being that the commissioner of public lands was an indispensable party to this determination.

We propose to discuss the question of jurisdiction and indispensable parties first.

Appellant recognizes the rule in this regard to be as stated in Swayze v. Bartlett. 58 N.M. 504, 273 P.2d 367, as follows:

"If the controversy involves a question concerning the legality of a state lease, the eligibility of the lessee thereunder, the matter of performance of the lease, reservations, if any, in the lease, or a matter of public policy requiring passage thereon by the commissioner of public lands, then the commissioner is not only a necessary party, but is an indispensable party. If, on the other hand, none of the above questions are involved, a district court should have jurisdiction to adjudicate the issues as between private litigants, liberally allowing, however, intervention to the commissioner, if any public land question is or could be involved in the case."

and while admitting that no question is present concerning legality of a state lease, or eligibility of a lessee thereunder, or of the performance of a lease, or the reservations therein, claims that we have here a matter of public policy requiring passage thereon by the commissioner of public lands. The public policy question present, as we understand appellant, is one involving the question of when occupants of state lands are to be evicted therefrom, the land commissioner having made no move in this direction.

We are unable to follow appellant's argument. We did not say in Swayze v. Bartlett, supra, that if a public policy question was present the land commissioner was an indispensable party. We said the rule of indispensability as set up in Burguete v. Del Curto, 49 N.M. 292, 163 P.2d 257, was to be applied if the public policy question involved was one "requiring passage thereon by the commissioner of public lands." The issue here is to our minds neither a public policy question, nor does it require passage thereon by the commissioner. He has complete dominion and control over all state lands. State ex rel. Otto v. Field, 31 N.M. 120, 241 P. 1027. In his handling of the state lands he is subject to the restrictions set up in the Enabling Act, our state Constitution, and in statutes enacted pursuant thereto. Dasburg v. Atchison, T. & S. F. Ry. Co., 45 N.M. 184, 113 P.2d 569. However, in the instant case, aside from any question of public policy incident to the proper exercise of his dominion and control, our legislature by the passage of § 7–7–5, N.M.S.A.1953, clearly provided that lessees should protect the state lands leased by them from trespass by unauthorized persons under penalty of possible forfeiture for failure to do so. We are clear that the cross complaint for trespass did not require the presence of the land commissioner as an indispensable party.

We should also point out that we see no material difference between the issues presented by the cross complaint and those tendered by the appellant in her complaint,

and here, likewise, we see no public policy issue requiring action by the land commissioner. We might mention that any other conclusion would leave parties involved in a dispute concerning possession of land, where the claim by one was based on a state lease whereas that of the other was not, without any remedy in court if the land commissioner refused to bring the suit or intervene. Such a result was never contemplated, nor is it necessary or desirable.

Neither do we find any merit in appellant's point concerning appellees not being the real parties in interest. If we understand her argument correctly, it is simply that the land commissioner as the officer in charge of the state lands and having dominion over them is the only real party in interest to bring the counter-claim for trespass. Compare Heroux v. Katt, 76 R.I. 122, 68 A.2d 25, 12 A.L.R.2d 1186, and annotation commencing on 1192.

■■ We come now to the crucial point on this appeal. Whereas, appellant undertakes to attack the court's finding concerning the correctness of the surveys and the error in the location of the fence, this argument can avail her nothing since the findings are amply supported by substantial evidence, and accordingly will not be disturbed on appeal. Hyde v. Anderson, 68 N.M. 50, 358 P.2d 619; Brown v. Martinez, 68 N.M. 271, 361 P.2d 152; Sunmount Co. v. Bynner, 35 N.M. 527, 2 P.2d 311.

Findings of fact and conclusions of law as required by Rule 52(b), Rules of Civil Procedure (§ 21–1–1(52) (B), N.M.S.A. 1953) were duly filed in the cause. The following findings contained therein are conclusive of appellant's rights:

"23. That the 1937 survey and the accompanying field notes in evidence, as made by the Government to the land and premises which are the subject matter of plaintiff's complaint and defendants' counter-claim, coincide and are identical with the original survey and accompanying field notes as made in 1878.

"24. That the recent survey to the land and premises which are the subject matter of plaintiff's complaint and defendants' counter-claim, as made by the Daniel Engineering Company of Alamogordo, New Mexico, coincides with and is identical with the 1937 survey and accompanying field notes and the original 1878 survey and its accompanying field notes.

"25. That the plaintiff, Elizabeth J. Sproles' fence on the west side of Section 33, Township 8 South, Range 9 East, N.M.P.M. is approximately 420 feet over onto state lease land and extends on said leased land to such extent, the same being the east boundary of Section 32, Township 8 South, Range 9 East, N.M.P.M.; that the plaintiff's, Elizabeth J. Sproles', fence on the

north side of her Section 33, Township 8 South, Range 9 East, N.M.P.M. is approximately 30 to 60 feet over onto the southern portion of Section 28, Township 8 South, Range 9 East, N.M.P.M. a portion of which is state lease land being described as the W½, SW¼ of Section 28, Township 8 South, Range 9 East, N.M.P.M. and the other portion being held by the defendants under deed and being described as the SE¼ and the E½ SW¼ of Section 28, Township 8 South, Range 9 East, N.M.P.M."

Whereas, we have held that a boundary line that is uncertain or in dispute may be established by acquiescence, which is comparable to an implied agreement, Murray Hotel Co. v. Golding, 54 N.M. 149, 216 P.2d 364, or by agreement, Rodriguez v. La Cueva Ranch Co., 17 N.M. 246, 134 P. 228, proof of long recognition by the abutting owners is sufficient to support a finding as to true location, Velasquez v. Cox, 50 N.M. 338, 176 P.2d 909. However, the elements of uncertainty and dispute are not essential conditions to the establishment of boundary lines by acquiescence. Woodburn v. Grimes, 58 N.M. 717, 275 P.2d 850.

Where, as here, the court has considered all of the evidence before it and has determined the true location of the boundary, and the boundary is different from the one acquiesced in over the years, on review we will not disturb such finding when supported by substantial evidence. Sunmount Co. v. Bynner, supra. The cases of Woodburn v. Grimes, supra, and Hobson v. Miller, 64 N.M. 215, 326 P.2d 1095, are to like effect although in each the court found the correct line to be the one acquiesced in for many years.

What we have is essentially a case of conflicting evidence. The location of the fence, for many years without complaint from appellees and the acquiescence therein is strong evidence of its correct location, and would have given ample support to a finding that it represented the true line so far as the parties to this action are concerned. Woodburn v. Grimes, supra. However, the court did not choose to so interpret this proof as opposed to that offered with reference to the survey, and accordingly we must apply the rule that on appeal findings of fact based on conflicting evidence are binding when supported by substantial evidence. Citation of authority would be superfluous.

Notwithstanding what we have said concerning the rules applicable in reviewing findings made by the trial court, appellant presents another argument under her second point. She argues that if the findings are determined to be binding, nevertheless, the court erred in ordering removal of the fence to the correct line as found.

She invokes the doctrine denominated by de Funiak in his Handbook of Modern Equity (2d Ed.), § 25, page 42, as the "balancing of equities or the balancing of conveniences or hardships," from which we quote as follows:

"The doctrine or rule is sometimes stated to be that the court will weigh the loss, injury, or hardship resulting to the respective parties from granting or withholding equitable relief; that if the loss resulting to the plaintiff from denying the equitable relief will be slight as compared to the loss or hardship caused to the defendant if the injunction is granted, the equitable relief will be denied. The plaintiff is left to pursuit of damages as his remedy."

4 Pomeroy's Equity Jurisprudence (5th Ed.), § 1359a, page 970, and Restatement of Torts, § 941, are generally to the same effect.

In the instant case, the court found that appellees were not entitled to damages, but ordered possession of the lands in question delivered to appellee, which, in effect, is an injunction against continued occupancy or trespass by appellant.

Although there is no proof of the value of the land in dispute, and very little evidence concerning the improvements, it appears that the land in question is contained in a grazing lease covering a total of approximately 8155 acres, and the annual rental on this property is computed at rates varying from three cents to six cents per acre. The total acreage involved is in the neighborhood of fifty acres. As regards the improvements, we know nothing except that there is a house where plaintiff has not lived for a number of years, but where she still has furniture and has stayed overnight on occasion in recent years. It also appears there are some corrals and an old well on the property. A new well was completed within the last few years, which is a short distance east of the correct line as found by the court, and on appellant's property.

From the foregoing, together with the fact that the possession of the property in dispute has been in appellant for many years without any question being raised by the appellees or their predecessors, we are convinced that this is a proper case for the balancing of equities.

It appears from the record before us that the court did not consider it could legally do so. In a written decision filed in the case, we find the following stated by the court:

"At the outset, the Court desires to make a few comments before going into the issues. One is that he is very reluctant to make the decision that he feels he will have to make in this case. It is rather hard for a court to decide that a woman who has been in possession and actually living on land for 45 years should be de-

prived of a part of it, which she firmly believes to be hers and which has been under fence for this entire time.

"The law would be well established if this property surrounding this particular tract of land were private property, that her property lines have been established years ago by the existing fence and that they would be her property lines today and any discrepancy would be hers, by the facts that she has been in adverse possession for a great number of years and her title could not be attacked. But where some of the property belongs to the State of New Mexico raises a different line of thought and a different line of authorities and different law in the matter which the court is confronted with."

It is clear from what was said by the court, and from its conclusion that it was of the opinion that whereas appellees were bound by the established fence line between their fee lands on the north and the lands of appellant, that the law required a different result as between the state lands leased by appellees and the lands of appellant.

■ Although appellant did not request the trial court to consider the equities in the case, she has here argued the point, and appellees have met the issue directly and have not objected to it as being raised in this court for the first time. Accordingly, under the rule announced by us in Ferran v. Jacquez, 68 N.M. 367, 362 P.2d 519, it is proper for us to pass upon whether or not the trial court should have considered the same.

■ The action being for injunction, and accordingly in equity, before ordering removal of the long-established and recognized fences, the trial court should have weighed the relative hardship likely to result to appellant through granting the relief as compared with the burden to appellees in the event the relief was denied. This is the rule quoted supra. It is also the rule followed by the Colorado Supreme Court in Golden Press, Inc. v. Rylands, 124 Colo. 122, 235 P.2d 592, 28 A. L.R.2d 672, a case involving encroachments where an injunction decree was reversed for failure to consider the relative advantages and disadvantages that would flow therefrom. See, also, the cases cited in note following this case in 28 A.L.R. 2d 699.

By nothing which we have said herein do we in any way suggest that the rules announced for fixing boundaries as between private litigants, or for granting or denying injunctive relief, would be applicable in a case involving the interests of the state. However, in our view, no question of title or of the true boundary between appellant's property and the state is involved. There was nothing to prevent determination of the

issues presented here as between the parties who were present in court.

It follows from what has been said that the cause should be reversed and remanded to the district court with instructions to set aside the judgment heretofore entered and to then consider the equities, and to make findings and conclusions and to enter its judgment thereon, all in a manner not inconsistent herewith. It is so ordered.

CHAVEZ and NOBLE, JJ., concur.

COMPTON, C. J., and CARMODY, J., not participating.