391 P.2d 653

Ruby HEATON, Plaintiff-Appellee,

v.

Eldon F. MILLER and Ruby F. Miller, Defendants-Appellants.

No. 7375.

Supreme Court of New Mexico.

April 20, 1964.

Frazier & Cusack, Roswell, for appellants.

Harris & Cathey, Roswell, for appellee.

CHAVEZ, Justice.

Appellants, defendants in the lower court, appeal from a judgment decreeing that plaintiff-appellee is the owner and entitled to possession of the west 80 feet of the west 160 feet of a part of the NE¼ NW¼, otherwise described as Lot 3, Sec. 3, T. 11 S., R. 24 E., N.M.P.M., and requiring appellants to remove, with reasonable dispatch, their buildings and utility lines from appellee's land.

The amended complaint alleged that on or before May 1, 1962, appellee was the owner and entitled to possession of the lands above described, and that appellants were the owners of an adjoining tract described as the east 80 feet of the west 160 feet of the NE¼ NW¼, otherwise described as Lot 3, Sec. 3, T. 11 S., R. 24 E., N.M.P.M.; that approximately five months previous thereto, appellants, without notice to appellee, commenced construction of two dwelling houses, but prior to commencement of construction of said houses, appellee advised appellants that there was some question as to the exact location of the true boundary line between the respective parties' property; that, nevertheless, appellants proceeded to complete the construction of the buildings in such a manner that they encroached upon appellee's property to the extent of approximately three feet; that appellants also constructed utility lines encroaching upon appellee's property an addi-

tional three feet; that appellee requested appellants to remove the encroachments from her premises, but appellants did not do so, and that appellee will suffer irreparable injury; that appellants should be required to remove the encroachments and restore the property to its original condition; that appellee has been damaged in the amount of $5,000 by the encroachments, and that appellants removed fences to appellee's damage in the sum of $2,000; and that appellants diverted water to appellee's property to her damage in the sum of $1,000. Appellee prayed for a mandatory injunction requiring appellants to remove their encroachments and for recovery of $8,000 damages.

Appellants answered, alleging that by stipulation the amended complaint should be construed as an action in ejectment, notwithstanding the prayer for mandatory injunction, and other matters alleged which were extraneous to an action in ejectment; that appellants had been in open, notorious and adverse possession of the property within the old fence lines since November 2, 1950; that until the summer of 1962, appellants believed that the old fence lines were on their east and west boundaries, but by reason of another party renting trailer spaces on the east and extending over the old fence line on their property, appellants had a survey made which disclosed that the old fences were not located on the true property lines, and that appellee, in turn,

encroaches on other property lying west of her tract; that appellee acquiesced in the construction of appellants' houses and utility lines, and at the time such construction was being made, caused a chain link fence to be erected on her property west of the old fence line, which the parties believed to be the property line; that appellants acted in good faith in erecting their houses in the belief that they were located on appellants' property, and that it would cost appellants approximately $3,000 to move the two houses and utility lines; that by acquiescence in the old fence line and in the construction of the houses and utility lines, appellee is estopped to demand removal thereof, but appellants are willing to pay appellee the reasonable value of the land on which they encroached; and that appellants are also willing to purchase the land to the west of appellee's land in exchange for such land, and appellants tendered into court such reasonable amount of money as may be required. Appellants denied that appellee had been in actual possession of the east few feet of her tract of land; admitted that they encroached over the true boundary line, and that appellee demanded removal of the dwellings and utility lines after the completion of such construction; and generally denied the remaining allegations of the complaint.

Appellants cross-claimed, pursuant to § 22-8-14 et seq., N.M.S.A., 1953 Comp., alleging that they would prove at the trial

what improvements they made on the land in dispute and the value thereof. Appellants prayed that the case be decided under the provisions of the ejectment statutes of New Mexico.

Appellee answered the cross-claim by general denial, and affirmatively pled that appellants did not enter into possession of appellee's land under color of title.

The trial court made the following findings of fact:

"2. That on and before May 1, 1962 plaintiff was the owner and entitled to possession of the following described tract of land:

The West 80 feet of the West 160 feet of the following described tract: A part of the NE¼ NW¼ (otherwise described as Lot 3 of Section 3, Township 11 South, Range 24 East, N.M. P.M., described as follows: Beginning at a point that is 999.02 feet East and 641.46 feet North of the Southwest corner of said NE¼ NW¼ of Section 3, thence North 671.46 feet to the North line of said section, thence West 320.02 feet, thence 671.46 feet south, thence East 320.02 feet to the place of beginning.

"3. The defendants are the owners and are in possession of the East 80 feet of the above described tract.

"4. The plaintiff and the defendants and their predecessors in title have never had any agreement as to the boundary line between the lands of the respective parties.

"5. That there have been several old fences or partial fences along the boundary line between the properties of the respective parties but prior to the determination of the true boundary there was never any agreement between the parties as to the location of the boundary line.

"6. During the year 1962, the defendants with knowledge that there was some question as to the exact location of the true boundary line between said tracts, constructed two dwelling houses in the belief that said houses were located entirely on their own lands. Said houses, however, were not constructed entirely on the defendants' land, but encroached upon the plaintiff's tract to the extent of 3.79 feet and in connection with said dwellings, the defendants constructed and installed or caused

to be constructed and installed, water, sewer and gas lines on the west side of said dwellings, and said lines are an additional encroachment on the plaintiff's land to the extent of some 1 or 2 feet.

"7. After the defendants constructed said dwelling houses, they caused a survey to be made and the parties are in agreement that said survey shows the true boundary line between their respective properties and the extent of the encroachment on plaintiff's land of said houses and utility lines.

"8. The plaintiff had knowledge of the construction of said houses and of the location of same on the ground and raised no objections to such locations or to the construction of said houses.

"9. No testimony or evidence was introduced showing that the plaintiff made any statement or did any act prior to or during the construction of said houses which was relied upon by the defendants as an acknowledgement or agreement that said houses did not encroach upon the land of the plaintiff.

"10. When the defendants purchased their tract, they did so without any survey of the boundaries and they started the construction of and constructed the dwelling houses in question, without obtaining any survey of the boundaries.

"11. The cost to the defendants of removing the encroachment from plaintiff's property is alleged to be approximately $3,000, and a witness offered by the defendants testified that the cost would be approximately $3,434.00. The testimony referred to included estimates of amounts necessary to place the houses in proper repair after moving and other items which the Court feels may be unnecessary or too high, but in any event the cost of moving the houses and placing them in repair will be at least $2,000.00.

"12. The plaintiff failed to prove any damage due to the construction of the houses in question other than such damages as naturally flow from the taking by the defendants of a portion of her land and the plaintiff also failed to prove any damage due to the removal of fences by the defendants.

"13. The plaintiff likewise failed to prove any damages due to the

diversion of water on to her property by the defendants.

"14. The dwelling houses in question arc of the reasonable value of $8500.00, but such part of said houses as encroach upon the lands of plaintiff has no separate value.

"15. Testimony was offered showing the market value of the plaintiff's land to be $95.00 per front foot, but no testimony was introduced showing the value of that portion of the plaintiff's land which is occupied by the defendants' houses and utility lines.

"16. The plaintiff has no adequate remedy at law."

The trial court then made the following conclusions of law:

"1. The plaintiff is not estopped from maintaining this action to enforce the removal by the defendants of their houses from her lands.

"2. The plaintiff is not barred by laches from maintaining this action.

"3. The fact that the cost of removing the encroachments is disproportionate to the value of the plaintiff's land appropriated by the defendants does not operate to deprive the plaintiff of her right to a mandatory injunction, since the defendants constructed their houses and improvements without taking steps reasonably necessary to ascertain the boundary between their land and that of the plaintiff.

"4. The plaintiff is entitled to a mandatory injunction requiring the defendants, with reasonable dispatch, to proceed to remove their buildings and utility lines from the land of the plaintiff."

It was stipulated that appellants purchased the property on November 2, 1950, and that their deed was recorded.

Appellants' first point is:

"I. Appellee has (a) an adequate remedy at law, (b) elected such remedy, and (c) the trial court erred in entering judgment for a mandatory injunction."

The pertinent statutes are:

"22-8-1. When ejectment maintainable.—The action of ejectment may be maintained in all cases where the plaintiff is legally entitled to the possession of the premises. * * *

"22-8-3. Principles apply to equity suits.—The principles of the provisions of this article shall apply and extend to all suits in equity when the object of

**154**

the complaint or answer is for the recovery of lands and tenements. * *

"22–8–12. Writ of possession.— Upon judgment for the recovery of possession, a writ of possession shall be issued, and the sheriff shall deliver to the plaintiff the possession of the premises, and also collect the damages and costs, as on execution in other cases."

Appellants argue that ejectment is the remedy ordinarily invoked in the settlement of boundary disputes, Murray Hotel Co. v. Golding, 54 N.M. 149, 216 P.2d 364, and that there is no allegation in the amended complaint which in any way stated an equitable cause of action, stating only an action at law for possession of the property in controversy. Also, that even in equity the trial court should conform to § 22–8–3, supra.

As we read appellee's amended complaint, it is first alleged that she is the owner and entitled to possession of the land involved. She then alleged that appellants constructed two houses and utility lines in such a manner as to encroach on her property to her damage, and that appellants should be required to remove the encroachments.

There is but one form of action known as a "civil action" under our rules and the pleader is only required to plead facts entitling him to relief on any sustainable theory. Sections 21–1–1(2) and 21–1–1(8)

(a) (2), N.M.S.A., 1953 Comp. In Madrid v. Spears, (10 CCA 1957), 250 F.2d 51, it is stated:

"* * * And while the rules do not purport to abolish the distinction between equity and law, no distinct forms of action are necessary or permissible to state a claim under either. * * *"

It would thus seem that appellee's amended complaint is that type of alternative pleading which is permissible under Rule 8 (a) (2), (§ 21–1–1(8) (a) (2) supra); Coca v. Arceo, 71 N.M. 186, 376 P.2d 970. See also, Franciscan Hotel Co. v. Albuquerque Hotel Co., 37 N.M. 456, 24 P.2d 718; and Martinez v. Mundy, 61 N.M. 87, 295 P.2d 209, where we held that inasmuch as both legal and equitable remedies are administered by a single court, there was no error by a joinder of the causes of action.

■ Encroachments by buildings or portions of buildings occasion frequent resort to the injunctive powers of equity. 1 Am. Jur.2d, Adjoining Landowners, pp. 776–777, § 128. The usual theory upon which the injunction is granted is the inadequacy of the remedy at law. 1 Am.Jur.2d, p. 778, § 129 and p. 780, § 132; 28 A.L.R.2d, p. 694, § 5. This is so, even though some courts, in determining whether a mandatory injunction should issue to compel an adjoining landowner to remove an encroachment, take the position that it is proper to consider the relative hardships which would result from

granting or denying the injunction. 28 A.L.R.2d, p. 699, § 6.

Appellants cite our recent case of Sproles v. McDonald, 70 N.M. 168, 372 P.2d 122, and say that the trial court's decision and judgment is in conflict with Sproles. We do not agree. In that case, Sproles brought suit alleging ownership of certain lands; the fact of fences being present for many years, and that appellees—McDonalds threatened to trespass on her property by constructing a fence some 420 feet to the east of the existing fence; that this would result in a continuing trespass for which Sproles had no adequate remedy at law; and prayed that the court enjoin such trespass on Sproles' land and the building of the fence. By answer, McDonalds generally denied the allegations of the complaint and by a counterclaim asserted ownership of lands directly west and bordering with appellant's land on the north and west. The trial court found that the original survey of 1878, together with a resurvey in 1937 and another in 1959, all showed the correct lines; that the fence lines encroached as claimed by McDonalds, and that as far as the fence location and encroachment between the E½ SW¼ and SE¼, Sec. 28, owned by McDonalds, and Sec. 33, the fence should remain unchanged. This court then said:

"Whereas, we have held that a boundary line that is uncertain or in dispute may be established by acquies-cence, which is comparable to an implied agreement, Murray Hotel Co. v. Golding, 54 N.M. 149, 216 P.2d 364, or by agreement, Rodriguez v. La Cueva Ranch Co., 17 N.M. 246, 134 P. 228, proof of long recognition by the abutting owners is sufficient to support a finding as to true location, Velasquez v. Cox, 50 N.M. 338, 176 P.2d 909. However, the elements of uncertainty and dispute are not essential conditions to the establishment of boundary lines by acquiescence. Woodburn v. Grimes, 58 N.M. 717, 275 P.2d [850] 805.

"Where, as here, the court has considered all of the evidence before it and has determined the true location of the boundary, and the boundary is different from the one acquiesced in over the years, on review we will not disturb such finding when supported by substantial evidence. * * *"

In Sproles, we said that the action being for injunction, before ordering removal of the long established and recognized fences, the trial court should have weighed the relative hardships likely to result through granting or denying relief. However, in in the instant case, where the trial court has considered the evidence, has determined, under the circumstances of this case, that the two houses constructed by appellants encroach upon appellee's land, and has required appellants to remove the encroachments, on appeal we will not disturb such

findings when supported by substantial evidence.

Golden Press, Inc. v. Rylands, 124 Colo. 122, 235 P.2d 592, 28 A.L.R.2d 672, was cited in the Sproles case. In Ariola v. Nigro, (1959), 16 Ill.2d 46, 156 N.E.2d 536, the Golden Press case was discussed and found not determinative, the court saying:

"* * * The 2-inch encroachment of the footings of defendant's structure therein, at a point some 7 inches below the surface, was made in good faith, and in no way injured the plaintiff's property, or affected its use, except on the remote contingency that the plaintiff might someday dig a basement. The denial of the injunction under those circumstances would not constitute a precedent for the instant case, where the encroachment was deliberate and caused plaintiffs extensive damages."

The rule is stated in 1 Am.Jur.2d, p. 779, § 131, as follows:

"* * * While the right to a mandatory injunction under proper circumstances is firmly established, the injunction may be refused because of the absence of proper circumstances, or especially because of inequitable incidents. It is impossible to lay down any general rule that will determine every specific case. It may be said only that in the exceptional cases where injunction has been refused, there always appears some element, such as innocent mistake or a bona fide claim of rights on the part of the defendant, laches on the part of the plaintiff, or the presence of some other incident, that would render inequitable the issuance of a mandatory injunction."

In Nitterauer v. Pulley, 401 Ill. 494, 82 N.E.2d 643, the defendants constructed a garage which extended approximately three feet onto plaintiff's land. A mandatory injunction to remove the encroachment was denied. On appeal, it was argued that appellants acquiesced in the building of the extension to the garage; that appellees built the extension in good faith and in the honest belief that they were on their own property; that the encroachment was slight and that the expense involved in tearing the building down would be out of proportion to the benefits accruing to appellants by the demolition; and that a mandatory injunction should not be granted and would be too drastic. The court held that:

"* * * Where the encroachment is slight and unintentional, and the cost of removal great, and benefit to the adjoining owner small, it has been held that the court will ordinarily decline to compel a removal and will leave the complaining party to his remedy at law. Pradelt v. Lewis, 297 Ill. 374, 130 N.E. 785, 14 A.L.R. 828. We do not think that the encroachment here

was unintentional in the sense that the word is used in the above-stated proposition of law. The owners of lot 13 added the three or four feet to their building without using any appreciable care to ascertain the boundary line. The fact that they had no idea where the line was located would place upon them the burden of taking some precaution to see that they did not encroach on lot 12. They made no attempt by inquiry, survey or other means, to find the line. They must be held to have constructed their garage addition at their peril of encroaching on lot 12, if it turned out that they did. We find that they did so encroach, without question."

In Benoit v. Baxter, 196 Va. 360, 83 S.E. 2d 442, suit was brought by lot owners for mandatory injunction requiring the owners of an adjoining lot to abate trespass and encroachment by removal of a house which extended over the boundary line. The circuit court dismissed the bill and, on appeal, the encroaching defendants contended that plaintiff had an adequate remedy at law by way of an action in ejectment or of unlawful detainer. On appeal, the case was reversed and the court said:

"Title or right of possession is always involved in an action of ejectment. Davis v. Mayo, 82 Va. 97; 6 M.J., Ejectment, § 2, page 499. Neither title nor right of possession is in question here. Legal title to the land in question is established by appellants' deed, and appellees admit an encroachment thereon both i. their pleadings and evidence. A verdict in ejectment would specify the estate found in the Benoits, Virginia Code, 1950, § 8–823; but it would not abate the trespass or remove the encroachment.

"* * *

"By § 8–793, Code of Virginia, 1950, it is provided that a verdict or judgment for the plaintiff in such action shall be for the premises or such part thereof as may be found to be unlawfully held or detained by the defendant. That would not remove the encroachment on the land of the appellants.

"The object of appellants' bill is to have the abatement of a trespass by the removal of the encroachment, and thus permit them to have quiet possession of their land. This they could not obtain either in ejectment or unlawful detainer."

In Tyler v. City of Haverhill, 272 Mass. 313, 172 N.E. 342, the plaintiff and defendants were adjoining landowners, with neither able to show by any recorded deed or plan the exact boundary line between them. The defendant had constructed a heavy masonry wall which, as found by the master, encroached upon plaintiff's land and the

trial court ordered it removed. On appeal, the defendant contended the court's order was erroneous, on the ground that there was honest ignorance as to the true location of the boundary line and a reasonable basis for belief in the validity of his title to the disputed ground. The appellate court rejected this contention and said:

"We think that one who knows of claims to land which he proposes to use as his own, proceeds at his peril if he goes forward in the face of protests from the claimant and places structures upon the land. It is familiar law that buildings placed upon real estate by a trespasser become the property of the true owner of the real estate. A claim of ownership must be made good if it is to bar a trespass. Undoubtedly there may be circumstances which a court of equity will regard as full justification for refusing to require removal of a nuisance created under claim of right and endured when it might have been stopped; especially when great and disproportionate loss results to its creator, and the value of the land is not affected. Mere belief in one's right, however, no matter how honestly and reasonably entertained, is not such a circumstance; nor is great expense of removal, when there has been a deliberate invasion of a plaintiff's title to real estate, and protest,

followed by resort to the courts to ascertain the legal rights of the parties."

Under point II, appellants contend that the trial court erred by denying appellants a prescriptive easement covering the land in controversy. They again argue that this case comes within the purview of Sproles v. McDonald, supra, i. e., that a boundary line that is uncertain may be established by acquiescence or by agreement. Appellants argue that they used their property to the fence line beginning on November 2, 1950, the date that they purchased the property.

■ We cannot agree with appellants' contentions. There was no acquiescence as to the boundary line and the trial court found that there had been several old fences or partial fences between the properties, but there was never any agreement between the parties as to the location of the boundary line. Neither do we understand how, under the facts here present, appellee could profit or be unjustly enriched.

Hester v. Sawyers, 41 N.M. 497, 71 P.2d 646, 112 A.L.R. 536, is of no help to appellants. In that case, we quoted from 1 Thompson on Real Property, § 375, now § 417, as follows:

" ' Prescription applies only to incorporeal hereditaments. An interest in the land of another, greater than an incorporeal hereditament such as the possession and use of a building thereon,

cannot be established by prescription. The statutes of limitation do not directly apply to actions in which incorporeal hereditaments, such as easements, are involved, but only to actions for the recovery of land.' "

 Appellants third point is that the trial court should have barred appellee's action because of laches and estoppel. There is no merit in this point. The evidence is clear that the houses were completed in August, 1962, and the location of the boundary line was not known until a survey was made by appellants after the dwellings were constructed sometime in August or September, 1962. No evidence is pointed out of any conduct of appellee amounting to a waiver or non-claim. The court so found in finding No. 9, quoted supra. Sharpe v. Smith, 68 N.M. 253, 360 P.2d 917.

Appellants contend under point IV that the trial court should have entered judgment pursuant to the ejectment statutes. This contention is based upon § 22–8–14, supra, which was construed in Village of Cloudcroft v. Pittman, 63 N.M. 168, 315 P. 2d 517, reaffirming the rule laid down in New Mexico in Sandoval v. Perez, 26 N.M. 280, 191 P. 467. However, it is amply clear that § 22–8–14, supra, has no application in a case such as here present where appellants had no color of title, and appellee could in no sense be considered to be profiting or enjoying unjust enrichment. Madrid v.

Spears, supra, is a typical case for application of this statute. The instant case is materially different and the statute is not applicable. Appellants' point IV is without merit.

The judgment of the district court is affirmed.

It is so ordered.

NOBLE and MOISE, JJ., concur.