1999-NMCA-108

985 P.2d 757

**AMKCO, LTD., CO., a New Mexico limited liability company; Keeling Petroleum, Inc., a New Mexico corporation; and Keeling Distributing, Inc., a New Mexico corporation, Plaintiffs–Appellees,**

v.

**Mickey D. WELBORN, a single man, Defendant–Appellant.**

**No. 19725.**

Court of Appeals of New Mexico.

June 7, 1999.

Certiorari Granted, No. 25,820, July 30, 1999.

**588**

William G.W. Shoobridge, Shoobridge Law Firm, P.C., Hobbs, NM, for Appellees.

James E. Templeman, Templeman and Crutchfield, Lovington, NM, for Appellant.

## OPINION

DONNELLY, J.

{1} Appellees, Amkco, Ltd., Co., Keeling Petroleum, Inc. and Keeling Distributing, Inc., erected a $1,250,000 truck stop, store, and travel center in Hobbs, New Mexico. After the building and related facilities were constructed, Appellees discovered that a portion of the complex was built on land owned by Appellant and that it encroached a distance of fifty-eight feet onto the neighboring property.

{2} The trial court entered a judgment ordering Appellant to convey a fifty-eight-foot strip of property on which the encroachment was located to Appellees in return for the sum of $14,700, or alternatively that Appellant deed such strip of property to Appellees in exchange for a similar piece of land adjoining Appellant's property on its northern boundary.

{3} Appellant raises three issues on appeal: (1) whether the trial court erred in applying the "relative hardship" doctrine and denying Appellant's counterclaim for ejectment and quiet title; (2) whether the trial court properly fashioned an alternative equitable remedy that was fair to Appellant; and (3) whether the trial court erred in finding that the encroachment resulted from a mutually mistaken state of mind between Appellees and Appellant. We reverse and remand.

## FACTS

{4} In May 1988 Keeling Petroleum, Inc., controlled by Alfred Keeling and Maritia Keeling, his wife, purchased a tract of land located at the corner of West Marland Boulevard and West County Road in Hobbs. After acquiring the property, the corporation determined that it had purchased more land than was necessary for construction of a travel center, store, and truck station, and it agreed to keep a tract which measured 220 feet by 300 feet, and to sell the remainder to Appellant, who owned other land adjoining the Keelings' property.

{5} The Keelings hired Richard R. Pettigrew, a professional engineer and surveyor, to prepare a boundary survey of the property which the corporation agreed to sell to Appellant. Utilizing this survey, two legal descriptions were prepared, one which described the property to be sold to Appellant and one which described the property the corporation intended to retain. Both legal descriptions indicated that the north fifty-eight feet of the property adjoining Marland Boulevard, which the corporation retained, was subject to an easement for a highway right-of-way.

{6} Keeling Petroleum, Inc. entered into a contract for the sale of the excess property to Appellant on March 30, 1990. Appellant fulfilled the terms of the purchase agreement and a special warranty deed was issued to him on June 30, 1997. The Keelings hired Ken Hovey Design Group to prepare a site plan and layout of the project in 1993. The Keelings also requested that John West Engineering Company perform additional surveying in 1993. The site plan was completed on September 11, 1993, and the survey was finished on November 8, 1993.

{7} Unknown to the Keelings, the Ken Hovey Design Group site plan and the John West Engineering survey placed a portion of the construction site fifty-eight feet south of the project's north boundary. Construction of the project began in December 1996 by Keeling Petroleum, Inc., Amkco Ltd., Co., a limited liability company, and Keeling Distributing, Inc. Each of these entities was controlled by the Keelings. The general contractor for the project, Lasco Construction Company, rechecked the survey stakes placed by John West Engineering for the project. Based on that inspection, the travel center was built within the survey stakes placed by John West Engineering. Upon completion of the project, Appellees sought to obtain permanent financing for the facility from Conoco Oil Company (Conoco). Conoco requested that a new survey be obtained. The new survey revealed that a portion of the facility substantially encroached on property owned by Appellant, and the encroachment covered approximately nine percent of Appellant's remaining usable land.

{8} After Appellees discovered the encroachment, they notified Appellant and sought to purchase the area affected by the encroachment. Appellant, however, declined to sell such property. In a further effort to persuade Appellant to sell the strip of property, Appellees purchased a fifty-eight-foot strip of property adjoining the south side of Appellant's property and offered to trade that parcel for the area affected by the encroachment.

{9} After failing to negotiate a purchase or land exchange, Appellees filed suit seeking a declaratory judgment as to the rights of the parties, seeking an order requiring Appellant to convey the strip of property for a reasonable fair market price, or for the award of other equitable relief. Alternatively, Appellees also sought reformation of the contract and deed conveying the land purchased by Appellant, alleging that the deed delivered to Appellant was the result of a surveyor's error. At trial, Appellees subsequently abandoned their claim for reformation. Appellant filed a counterclaim for ejectment and to quiet title to the property owned by him.

{10} Following trial, the trial court adopted findings of fact and conclusions of law determining, among other things, that Appellees "unknowingly constructed a 58–foot encroachment onto [Appellant's] property in good faith reliance of a survey"; that Appellant saw "the construction of ... [the] Travel Center and was unaware of any encroachment until he was advised by [Appellees] after construction was complete"; "[t]he

encroachment occurred because [Appellees] and [Appellant] had a mutually mistaken state of mind as to where their boundary line actually ran and justifiably relied upon mistaken survey stakes"; "[t]he encroachment was not constructed in willful disregard of the property rights of [Appellant]"; and that Appellees "took reasonable steps to ascertain the boundary between their land and that of [Appellant]." The trial court also found that "[t]he cost of the removal of the encroachment by [Appellees] and resulting damages would be disproportionate to any damage caused to [Appellant's] property"; that Appellant's "property rights will not be irreparably injured by the denial of an order to remove the existing encroachments"; and that Appellees' "Travel Center will be irreparably injured and not viable" if removal of the encroachment was ordered, and removal of the encroachment would eliminate Appellees' "ability to sell diesel fuel and would require removal of improvements costing . . . $188,837.00 to construct."

{11} Based upon its findings of fact and conclusions of law, the trial court entered a judgment ordering Appellant to convey to Appellees the area encroached upon in return for the sum of $14,700, or alternatively to elect to accept a deed for replacement property in exchange for other property of Appellees. The trial court also awarded Appellees the sum of $3,600.03 for their taxable costs.

*DISCUSSION*

{12} We jointly discuss Appellant's first and second issues asserted on appeal. Appellant argues that the trial court erred in ordering him to convey a portion of the property owned by him to Appellees in return for the sum of $14,700, or alternatively ordering that he convey a portion of his property to Appellees in exchange for a tract of land owned by Appellees. Appellant asserts that the area ordered to be conveyed to Appellees comprises a substantial portion of his remaining total usable land and that the circumstances shown here do not warrant compelling him to convey his property under the trial court's application of the equitable "relative hardship" doctrine. Appellant argues, among other things, that Appellees failed to

provide the Ken Hovey Design Group with a copy of the 1990 Pettigrew survey and that this factor contributed to the failure of the Ken Hovey Design Group and John West Engineering to correctly place the encroaching portion of Appellees' improvements within land retained by them.

■ {13} On appeal, we review a decision of the trial court granting or denying equitable relief for abuse of discretion. *See Navajo Academy, Inc. v. Navajo United Methodist Mission Sch., Inc.,* 109 N.M. 324, 330, 785 P.2d 235, 241 (1990) (standard of review for order enjoining landlord from evicting tenant from premises until tenant had reasonable opportunity to locate a new facility held not abuse of discretion); *Wolf & Klar Cos. v. Garner,* 101 N.M. 116, 118, 679 P.2d 258, 260 (1984) (application of doctrines of "clean hands" or other equitable defenses is entrusted to sound discretion of trial court); *Padilla v. Lawrence,* 101 N.M. 556, 562, 685 P.2d 964, 970 (Ct.App.1984) (grant or denial of equitable relief rests within sound discretion of trial court).

■ {14} Generally, the remedy for alleviating an encroachment is the issuance of an injunction ordering removal of the encroaching structure. *See Heaton v. Miller,* 74 N.M. 148, 154, 391 P.2d 653, 657 (1964); *Sproles v. McDonald,* 70 N.M. 168, 174–75, 372 P.2d 122, 126–27 (1962); *see also Urban Site Venture II Ltd. Partnership v. Levering Assocs. Ltd. Partnership,* 340 Md. 223, 665 A.2d 1062, 1065 (1995) (hereafter *Urban Site Venture* ). A mandatory injunction is an injunction which compels some positive action by the person or persons enjoined. *See State ex rel. Corbin v. Portland Cement Ass'n,* 142 Ariz. 421, 690 P.2d 140, 144 (Ariz.Ct.App. 1984). In *Sproles,* however, our Supreme Court recognized that in cases involving encroachments the district court should weigh the relative hardships likely to result from the issuance of a mandatory injunction. 70 N.M. at 175, 372 P.2d at 127. The *Sproles* Court reversed the district court's order directing the removal of certain fences and directed that the court weigh the competing interests and equities of the parties before ordering the removal of such improvements. The Court in *Sproles* quoted from William Q.

de Funiak's *Handbook of Modern Equity* § 25, at 43 (2d ed.1956), noting:

"The doctrine or rule [balancing of equities] is sometimes stated to be that the court will weigh the loss, injury, or hardship resulting to the respective parties from granting or withholding equitable relief; that if the loss resulting to the plaintiff from denying the equitable relief will be slight as compared to the loss or hardship caused to the defendant if the injunction is granted, the equitable relief will be denied. The plaintiff is left to pursuit of damages as his remedy."

*Sproles,* 70 N.M. at 174, 372 P.2d at 126.

{15} In *Heaton* our Supreme Court affirmed on appeal a decision of the district court ordering the defendants to remove a dwelling house, and water, sewer, and gas lines that encroached on property owned by the plaintiff. The Court, although agreeing with the district court that the facts therein warranted the issuance of a mandatory injunction, reiterated, however, that in appropriate cases where equity warrants, the court may deny the issuance of an injunction. The Court quoted with approval from 1 Am. Jur.2d *Adjoining Landowners* § 131, at 779, stating:

"While the right to a mandatory injunction [for removal of encroachments] under proper circumstances is firmly established, the injunction may be refused because of the absence of proper circumstances, or especially because of inequitable incidents. It is impossible[, however,] to lay down any general rule that will determine every specific case...."

*Heaton,* 74 N.M. at 156, 391 P.2d at 658; *see also Cunningham v. Gross,* 102 N.M. 723, 725, 699 P.2d 1075, 1077 (1985) (stating that in ascertaining whether injunctive relief should be granted, court may balance equities and hardships).

{16} Professor Dan B. Dobbs, in 1 *Dobbs Law of Remedies* § 5.104(4), at 816 (2d ed.1993), aptly summarized the contrasting principles involved in balancing the equities in encroachment cases. Dobbs observes: .

*Balancing Hardships.* The dominant approach in the encroachment cases is to balance the relative hardships and equities

and to grant or deny the injunction as the balance may seem to indicate. If the injunction is denied, the plaintiff is left with defendant's encroaching structure partly on his land and he will be entitled to damages in lieu of the injunction. If the hardship of removal is not too great, a mandatory injunction will issue to require removal, leaving the plaintiff in complete possession.

*Guiding Policies.* Courts seem mainly moved by two central considerations. *First,* no one should be permitted to take land of another merely because he is willing to pay a market price for it. This would amount to a private eminent domain ....

*Second,* although private eminent domain cannot be sanctioned, neither extortion nor economic waste that may be entailed in destroying a structure is desirable. If the encroachment can be removed only by destroying a part of the defendant's large building, but the harm it does to the plaintiff is quite small, the mandatory injunction would compel economic waste or else put the plaintiff in position to demand an unconscionably high price to let the building stay in place. Conscionability and economic arguments may combine to disfavor this kind of result. These two general principles point in different directions; it is this fact that prompts courts to seek resolution through a balancing of hardships and equities.

*Id.* (footnotes omitted).

{17} As recognized by this Court, and depending on the facts and circumstances, injunctions may be drastic remedies which should issue only in extreme cases where there is evidence of compelling necessity and only where there is a showing of irreparable injury for which there is no adequate and complete remedy at law. *See Padilla,* 101 N.M. at 562, 685 P.2d at 970; *see also State ex rel. State Tax Comm'n v. First Judicial Dist. Ct.,* 69 N.M. 295, 300, 366 P.2d 143, 146 (1961) (holding that issuance of injunction is not a matter of right; issuance is proper only in sound discretion of court when remedy at law is not adequate); *Scott v.*

*Jordan,* 99 N.M. 567, 572, 661 P.2d 59, 64 (Ct.App.1983) ("[I]njunctions are harsh and drastic remedies . . . .").

{18} In *Urban Site Venture* the Maryland Court of Appeals discussed the circumstances wherein a court sitting in equity could refuse to issue a mandatory injunction ordering the removal of an encroaching structure. There, the court, quoting from *Easter v. Dundalk Holding Co.,* 199 Md. 303, 86 A.2d 404, 405 (1952), stated:

> "[I]t is an accepted rule that where a landowner, by innocent mistake, erects a building which encroaches on adjoining land, and an injunction is sought by the owner of the land encroached upon, the court will balance the benefit of an injunction to the complainant against the inconvenience and damage to the defendant, and *where the occupation does no damage to the complainant except the mere occupancy of a comparatively insignificant part of his lot, or the building does not interfere with the value or use of the rest of his lot,* the court may decline to order the removal of the building and leave the adjoining landowner to his remedy at law. *Hasselbring v. Koepke,* 263 Mich. 466, 248 N.W. 869, 873, 93 A.L.R. 1170 [ (1933) ]; *Mary Jane Stevens Co. v. First National Building Co.,* 89 Utah 456, 57 P.2d 1099, 1126 [ (1936) ]."

*Urban Site Venture,* 665 A.2d at 1065 (emphasis added).

{19} In challenging the trial court's application of the balancing of equities or relative hardship doctrine in the instant case, Appellant, relying in part on *Christensen v. Tucker,* 114 Cal.App.2d 554, 250 P.2d 660, 665 (1952), points out the magnitude of the encroachment here and argues that the trial court's order directing him to convey the property in question was unreasonable. *Cf. Nitterauer v. Pulley,* 401 Ill. 494, 82 N.E.2d 643, 649 (1948) ("Where the encroachment is slight and unintentional, and the cost of removal great . . . the court will ordinarily decline to compel a removal and will leave the complaining party to his remedy at law."); *Pradelt v. Lewis,* 297 Ill. 374, 130 N.E. 785, 787 (1921) (holding if encroachment is *slight* and unintentional, owner will ordi-

narily be left to legal remedies). *See generally* L.C. Warden, Annotation, *Mandatory Injunction to Compel Removal of Encroachments by Adjoining Landowner,* 28 A.L.R.2d 679 (1953). We agree with Appellant that under the circumstances shown here, an encroachment not of inches but of fifty-eight feet, the order directing him to convey a portion of his property to Appellees was an abuse of discretion.

{20} Some courts that have considered factual situations analogous to that presented here have declined to compel a landowner to convey property that has been encroached upon to the party responsible for the encroachment because the granting of such relief is tantamount to enforcing a private right of eminent domain. *See, e.g., Urban Site Venture,* 665 A.2d at 1065 (" 'No court has authority to compel the owner of land to surrender his property to another person, lacking the power of eminent domain, in exchange for a sum of money . . . .' " (quoting *Lichtenberg v. Sachs,* 213 Md. 147, 131 A.2d 264, 267 (1957))); *Goulding v. Cook,* 422 Mass. 276, 661 N.E.2d 1322, 1324 (1996) ("[W]here the encroachment is not for a public use, the taking may not be justified at all."); *Cross v. McCurry,* 859 S.W.2d 349, 354 (Tenn.Ct.App.1993) (stating court is without authority to order landowner to execute deed to adjoining property owner who built building which partially encroached on landowner's property); *Tyree v. Gosa,* 11 Wash.2d 572, 119 P.2d 926, 930 (1941) (same).

{21} In balancing the equities, few courts have gone so far as to issue a mandatory injunction ordering an innocent landowner to convey a *substantial* portion of property encroached upon to a party who is responsible for the encroaching structure. *See Feinzig v. Ficksman,* 42 Mass.App.Ct. 113, 674 N.E.2d 1329, 1333 (1997) (holding if encroachment is entitled to equitable exception from rule requiring removal, encroachment should be minimal in nature); *Tyree,* 119 P.2d at 930 (observing that review of cases in which courts have applied the doctrine of balancing of the equities, most of the cases dealt with instances where an encroachment projected a few inches on the land of another); *see also* Restatement (Second) of Torts

§ 941 cmt. c, at 583–84 (1979) (citing hypothetical example which would be deemed de minimis where protruding portion of building extended only four inches above tenth floor of high rise structure). Here, the fifty-eight-foot encroachment amounted to approximately nine percent of Appellant's remaining usable land. Under these circumstances, the encroachment cannot be considered minimal or de minimis in nature. We have found no authority supporting the compelled conveyance of such a substantial portion of land.

■■■ {22} In considering a claim of ejectment, the trial court, in the exercise of its equitable power, may consider the equities as shown by the facts presented by the parties. The court may consider, for example, whether the invaded landowner's remedy of ejectment is inadequate because of the impracticability of a sheriff executing a writ of possession. The court, after balancing the equities, may decline to issue an order compelling the removal of an encroaching structure where the encroachment is *slight*, the mistake is innocent, and the damages to the encroaching party tip the equitable scales are substantial and the benefit to the injured party are insubstantial.

■■■ {23} As observed by Richard R. Powell, *Powell on Real Property* § 68.09[2][a], at 68–39 (1998), if the court determines, after balancing the equities, that an order compelling the removal of the encroachment should not be issued, the court may, when appropriate, award damages to the injured party "as a substitute for removal." In such case, Powell observes that the encroachment constitutes a trespass and an award of damages may be appropriate. In that event:

> Damages for trespass are either temporary or permanent. Temporary damages are awarded to supplement an order of removal (injunction or ejectment). They are designed to make the victim whole by compensating that victim for the consequences of the encroachment. . . .

> If the court permits a wrongful encroachment to continue, it generally awards permanent damages. Permanent damages are measured by the diminution

in value of the victim's land caused by the trespass.

*Id.* § 68.09[2][b], at 68–39 to 68–40 (footnote omitted).

{24} As discussed above, the extent of the encroachment in the present case cannot fairly be described as minimal; instead, the degree of encroachment here can only be characterized as significant. In view of the extensive nature of the encroachment and the absence of any conduct on the part of Appellant contributing to the encroachment, we conclude that the trial court erred in ordering Appellant to convey to Appellees the portion of the land owned by Appellant on which the encroachment occurred and that it was error to deny removal of the encroachment.

■■■ {25} Here, Appellant sought the remedy of ejectment. Ejectment is a proper remedy for the removal of an encroachment on the land of another, where a party is legally entitled to possession of the premises, the party has been wrongfully ousted from possession of the land in question, and possession of the realty has been wrongfully detained. *See* NMSA 1978, §§ 42-4-1, -2 (1907). *See generally* 2 C.J.S. *Adjoining Landowners* § 46, at 46 (1972).

■■■ {26} Appellant also argues that the trial court erred in adopting a finding of fact determining that the encroachment resulted from a mutually mistaken state of mind between Appellees and Appellant. We agree. Nothing in the record indicates that Appellant did anything that led Appellees to misconstrue the proper boundary between the parties or to condone the encroachment. Even when the record is construed in a light most favorable to Appellees, at best it may be inferred that both Appellees and Appellant were unaware of the encroachment until after the structure was completed. Under these circumstances, the finding adopted by the trial court could not provide a valid basis for validating the encroachment.

{27} Finally, we address Appellees' protest that ejectment and removal of their encroachment constitute impermissible economic waste. We readily acknowledge some harm will result to Appellees from disman-

tling and removal of the encroachment. But that fact alone cannot justify use of the courts to require a conveyance of this magnitude to Appellees. We note the absence here of any benefit to the public of the kind that traditionally justifies a forcible taking of private property. If Appellees do not wish to "waste" their investment, then as this Court has said in the past under somewhat analogous circumstances, "nothing forbids [Appellees] from negotiating with [Appellant] to waive its right to compel removal of the building." *Cafeteria Operators, L.P. v. Coronado–Santa Fe Assocs.*, 1998–NMCA–005, ¶ 23, 124 N.M. 440, 952 P.2d 435. The fact that a "court[ ] injunction provides [Appellant] with a very strong bargaining position," is no grounds for denying Appellant the sole use and possession of his own private property, particularly when that bargaining position is simply a natural consequence of Appellees' own mistake. *See id.*

{28}   Because we determine that the trial court erred in ordering Appellant to convey the area owned by him and which was encroached upon to Appellees, and the degree of the encroachment was extensive in nature, we reverse the order granting such relief and remand for entry of an order requiring removal of the encroachment.

*CONCLUSION*

{29}   The trial court's judgment awarding costs and directing Appellant to convey the area upon which Appellees' structure and improvements have encroached in consideration of payment in the sum of $14,700, or alternatively directing the conveyance of realty in exchange for a deed to property owned by Appellees, is reversed, and the cause is remanded for further proceedings consistent herewith.

{30}   · IT IS SO ORDERED.

ALARID and BOSSON, JJ., *concur.*