275 P.2d 850

Al W. WOODBURN, A. C. Woodburn, Jr., A. L. Woodburn, and H. G. Woodburn, a co-partnership d/b/a Woodburn Bros., Plaintiffs-Appellants,

v.

Jack GRIMES, Defendant-Appellee.

No. 5797.

Supreme Court of New Mexico.

Oct. 11, 1954.

Rehearing Denied Nov. 12, 1954.

Carpenter, Eaton & Phelps, Roswell, for appellants.

Smith & Smith, Clovis, Morgan & Morgan, Portales, for appellee.

COMPTON, Justice.

This controversy involves a boundary line dispute. Appellants are the owners of the

north half of the southwest quarter, section 12, township 1 south, range 33 east, and appellee is the owner of that part of the south half of the southwest quarter immediately south of and adjacent to appellants' property. Two causes of action are alleged; the first, damages for the wrongful destruction of a division fence between the parties built by appellants a short time before the action was instituted; the second, to restrain a threatened trespass by appellee pendente lite. Appellee denied the claim for damages and alleged that for more than 20 years the tracts had been separated by a correct boundary line fence originally constructed by appellee's predecessors in title and which had long been recognized and acquiesced in as the boundary line between the two tracts, and that appellants had wrongfully destroyed such fence. Damages are sought by him for the wrongful acts of appellants in destroying the fence. By cross-complaint, he sought to establish and confirm the boundary line as the old fence line. The cause was tried to a jury which found the boundary line to be as contended for by appellee but denied damages. Judgment was rendered accordingly and appellants appeal.

A short while before the action was instituted, appellants tore the old fence down and built the new fence to the south. Appellee tore the new fence down and this action followed. Surveyors appeared as witnesses for both sides, who gave testimony pro and con as to the location of the boundary line as reflected by the government survey. Interesting as this testimony is, we do not find it necessary to resolve the conflict. We rest our conclusion on the evidence as to the true location on the ground of the dividing line between the land of the contending parties. In 1909 or sometime prior thereto, Sam J. Stinnett, patentee and former owner of the southwest quarter, built an east-west fence across it, dividing it into substantially two equal portions. Actually, this controversy involves less than one acre. Subsequently, this fence was extended in an easterly direction to the east side of section 12. An irrigation well was located by the original owner immediately south of the fence line on land now claimed by appellee. He, or his successors, irrigated the land to the south for a number of years, the tract to the north remaining in pasture. The new fence built by appellants is now to the south of the irrigation well and encloses land claimed by appellee.

In about 1927, Arthur C. Woodburn, father of appellants, was the owner of the abutting properties, and was fully aware of the old fence line. Neither he nor his successors ever contended the fence was not the correct boundary line until a short while before the suit was filed. He was also aware of the occupancy by appellee and his predecessors in interest up to the fence

line. He was likewise the predecessor in title to the property immediately to the east of appellee's tract, which he sold to the Sains in about 1927. Consequently, he had knowledge of the fence to the east and that the Sains occupied the tract up to the fence line, their north line being a continuation of appellee's north boundary line. On one occasion he stated to the Sains that the irrigation well was on their land. However, the evidence clearly shows that the well, long since in disuse, is located south of the original east-west fence. Appellee and his predecessors have occupied the premises claimed by him up to the old fence line for some 45 years and during which time appellants and their predecessors in interest have thus silently acquiesced therein. Such long recognition of the old fence, located by the patentee, when location of boundaries could be better ascertained from original land marks, is a controlling circumstance and affords ample evidence that the old fence was built on the true boundary line between their respective premises. See Murray Hotel Co. v. Golding, 54 N.M. 149, 216 P.2d 364; Ward v. Rodriguez, 43 N.M. 191, 88 P.2d 277; Velasquez v. Cox, 50 N.M. 338, 176 P.2d 909. Also see 6 Thompson, on Real Property, (Per. Ed.) § 3308, and cases cited.

Appellants strongly contend that the court erred in refusing to instruct the jury that doubt, uncertainty, or dispute is a necessary element in the establishment of a boundary line by acquiescence. Unquestionably, where uncertainty or dispute exists in this regard, a boundary line may be established by acquiescence. Rodriguez v. La Cueva Ranch Co., 17 N.M. 246, 134 P. 228; Murray Hotel Co. v. Golding, supra. But these elements are not essential in every case. A boundary line may be established by acquiescence where there has been long recognition by abutting owners. Velasquez v. Cox, supra [50 N.M. 338, 176 P.2d 914]. In the latter case we quoted approvingly from the case of State of Iowa v. Carr, 8 Cir., 191 F. 257, 112 C.C.A. 477, and it would not be out of place to repeat a part of what was there said.

" ' "Without any reference to the doctrine of title by adverse possession, the fact that a party owning a tract of land has for many years occupied and claimed up to a particular line as the true boundary, and the owner of the adjoining tract has silently acquiesced therein, is a circumstance strongly tending to show the correctness of the claim; and in the absence of other controlling circumstances the line so indicated should be taken as the true division between the respective premises." '

\* \* \* \* \* \*

"In Magoon v. Davis, 84 Me. 178, 24 A. 809, 810, the court said: 'The oc-

cupation and possession of the owners of lots by dividing fences erected soon after the establishment of the lines, when the location of the line may generally be better ascertained and understood than it can possibly be years afterwards, is entitled to great weight in determining the question. And, in cases of doubt, we think the fact of the mutual occupation of the parties, the mutual recognition of the line as indicated by their occupation and dividing fences, should prevail over the uncertainty which arises in any attempt; by the running of lines so many years after the original survey, to establish the true line between the parties.'

\* \* \* \* \* \*

"Where a boundary line lies on the ground is a question of fact (Sunmount Co. v. Bynner, 35 N.M. 527, 2 P.2d 311), and it is our duty on review to entertain all reasonable presumptions in favor of the correctness of the trial court's findings, conclusions and judgment. Thurmond v. Espalin, supra [50 N.M. 109, 171 P.2d 325]. The trial court considered all the evidence and found, in effect, that the boundary line in conformity with which defendant and his predecessors in title had occupied and improved the land was the true boundary."

The judgment will be affirmed, and it is so ordered.

McGHEE, C. J., and SADLER, LUJAN and SEYMOUR, JJ., concur.