488 P.2d 337

Roy M. GILMAN and Ethel F. Gilman, husband and wife, et al., Plaintiffs-Appellants,

v.

Floyd POWERS and Mary Frances Powers, husband and wife, et al., Defendants-Appellees.

No. 9135.

Supreme Court of New Mexico.

Aug. 30, 1971.

Harry L. Patton, Clovis, for plaintiffs-appellants.

J. Fred Boone, Portales, for defendants-appellees.

## OPINION

McMANUS, Justice.

Plaintiff instituted this action in the District Court of Roosevelt County. Several amended complaints followed. The essence of the action was a request for a declaratory judgment. The complaint was accompanied by an exhibit in the form of a survey of certain real estate in Roosevelt County and the plaintiffs asked the court to issue its declaratory judgment approving the survey plat and to affirm its correctness. Defendants' answer placed the problems at issue. After several hearings on the evidence the court issued a declaratory judgment which in effect denied the plaintiffs' requested relief. The court held that the boundaries of the respective tracts of land involved in the dispute were to be determined by existing fence lines or vestiges of fence lines. From this declaratory judgment the plaintiffs appeal.

The plaintiffs propose that there was a formal survey, following standards imposed by the United States Department of the Interior in the United States Bureau of Land Management's Manual, "Restoration of Lost or Obliterated Corners and Subdivisions of Sections * * * A Guide for Surveyors." United States Government Printing Office (1963). The claim is that the corners of the tracts involved herein were established by the survey and that the court is required to accept these surveyed boundaries as the true boundaries, even though the affected property owners have acquiesced in fence lines.

Plaintiffs-appellants lean heavily on their assertion that the court's findings of fact are inconsistent with the conclusions of law. The pertinent findings of the court are as follows:

"6. The original government survey of the township which includes the land involved in this action was performed in 1882, and only one of the original stones (at the southeast corner of said town-

ship) now can be located. Although the field notes of the original surveyor recite the placing of stone markers at each section corner and quarter-section corner in said township, there is no other evidence that such stones actually were set on the interior section and quarter-section lines thereof.

"7. Plaintiffs base their claim for declaratory relief on a private survey performed in April, 1968, by one Robert L. Lydick, which was tied to the stone marker at the southeast corner of the township and another stone found four miles north and one mile east of the Section 21 involved in this action, in the next township to the north of the one here involved, which stone appeared to have been placed by the original government surveyor. The Lydick survey also was tied into other private surveys made by Lydick in the township to the east of the one here involved and to a survey performed in said Section 21 in 1939, by one George W. Hawkins. The Lydick survey probably locates with reasonable accuracy the corners in question as they were or should have been located in the original survey, but due to inaccuracies in the original survey it is now impossible to locate with exactness the original corners of Section 21."

Conclusion of law No. 3 reads as follows:

"Since the true boundaries of the tracts involved herein have not been established, and since the parties and their predecessors in title have acquiesced in the existing fences, or vestiges thereof, as being their common boundaries for more than 30 years, a declaratory judgment should issue declaring said fences or fence lines to be the boundaries of said tracts, by acquiescence."

It appears that the original survey of this area was done in 1882 by government surveyors; another in 1939 by one Hawkins; still another by one Lydick in 1968. The last survey was made by surveyor Pender-

graft in 1969. The court found from ample evidence that the 1882 survey was replete with errors and that the Pendergraft survey was not satisfactory due to a failure to conform with accepted rules. U. S. Bureau of Land Management's Manual, supra. However, the Pendergraft survey was at least valuable in pointing out errors and inaccuracies in the other surveys since the other two surveyors, Hawkins and Lydick, were not in complete agreement as to the true boundaries from the use of surveying methods.

All of the witnesses testified as to the existence of fences separating the tracts involved, or the vestiges of fences, along with other cultural aspects found in the area.

■ This Court has previously resolved boundary disputes; notably, in Woodburn v. Grimes, 58 N.M. 717, 275 P.2d 850 (1954). As in the case at bar, there was a dispute concerning what was the true boundary between the parties litigant. In Woodburn, supra, as here, surveyors appeared as witnesses for both sides and gave testimony pro and con as to the location of the boundary line. The court said, "Unquestionably, where uncertainty or dispute exists in this regard, a boundary line may be established by acquiescence," citing with approval the cases of Rodriguez v. Cueva Ranch Co., 17 N.M. 246, 134 P. 228 (1912), and Murray Hotel Co. v. Golding, 54 N.M. 149, 216 P.2d 364 (1950), among others. In the Woodburn case, the Court also said:

"Interesting as this testimony is, we do not find it necessary to resolve the conflict. We rest our conclusion on the evidence as to the true location on the ground of the dividing line between the land of the contending parties."

In our case all parties agreed to the acquiescence theory. Based on the evidence there was more than ample support for the trial court's decision that the boundary line problem was resolved by acquiescence. Said evidence, in our opinion, was substantial. See Cave v. Cave, 81 N.M. 797, 474

P.2d 480 (1970). Reading the court's findings of fact and conclusions of law reveals no real inconsistency with his judgment.

■ Plaintiffs and defendants both object to the court's award of $876.50 to the witness Pendergraft. The court had ordered both sides to share this cost equally. All parties objected to the court's calling of this witness of its own motion, in the first instance. However, we feel it is within the sound discretion of the trial court to call such an expert witness to assist in shedding light on the issues in controversy where there are disputed facts. See Dinsel v. Pennsylvania Railroad Co., 144 F.Supp. 880 (D.C.Pa.1956). The expert witness, over the objections of all parties, was sworn and examined by the trial court and, at a later hearing, plaintiffs then cross-examined the witness with the trial court participating; whereas, the defendants declined cross-examination. Both plaintiffs and defendants protested the allowance of the sum to the expert witness. Their objection is well taken as to the amount of the fee. Section 20-1-4, subd. B, N.M.S.A. (Repl.Vol. 4, 1970) reads:

> "The district judge in any case pending in the district court may order the payment of a reasonable fee, to be taxed as costs in addition to the witnesses fees provided for in subsection A, for any witness who qualifies as an expert and who testifies in the cause in person or by deposition. The additional compensation shall include a reasonable fee to compensate the witness for the time required in attendance and the necessary time required in preparation or investigation prior to the giving of the witness's testimony. The expert witness fee which may be allowed by the court shall be paid to only one [1] expert witness unless the court finds that the testimony of more than one expert was reasonably necessary to the prevailing party and the expert testimony was not cumulative. Provided that the total expert witness fees which may be allowed by the court to the pre-

vailing party shall not exceed one hundred fifty dollars ($150)."

The decision of the trial court is hereby affirmed with the exception that the total expert witness fee is limited to $150.00 to be paid by the plaintiffs.

It is so ordered.

OMAN and MONTOYA, JJ., concur.