563 P.2d 586

**Margaret PLATT, Plaintiff-Appellant,**

v.

**Anselmo MARTINEZ, Defendant-Appellee.**

**No. 11090.**

Supreme Court of New Mexico.

April 6, 1977.

Rehearing Denied May 3, 1977.

Burton F. Broxterman, Albuquerque, for plaintiff-appellant.

N. Tito Quintana, Albuquerque, for defendant-appellee.

OPINION

PAYNE, Justice.

This is a boundary dispute. Plaintiff, Margaret Platt, brought suit alleging that the defendant, Anselmo Martinez, had encroached upon her lands by building fences that incorporated portions of her property within his. Martinez counterclaimed asking that title to the disputed land be quieted in him on the alternative grounds of either adverse possession or acquiescence. The trial court found for Martinez. We reverse.

In 1961 the plaintiff and her husband, since deceased, purchased a tract of land described as apportionate parts of a particular section. The defendant, Martinez, also held lands in the same section. His lands abutt the Platt property and were described as apportionate parts of the same section. The legal descriptions of the two tracts of land contained in the respective deeds do not conflict and create no over-lap. Martinez had purchased his land in 1955 and had been familiar with it from his boyhood. In 1964 the defendant procured a survey in which the surveyor followed some stone markers and some old fence posts in setting the boundaries. These corresponded to Martinez' understanding of the boundary and to the location of old fences of which only vestiges remained. Based upon that survey, Martinez built a new fence, which incorporates a portion of the Platt property within his.

The terrain where the fence was built, as viewed from the plaintiff's side, is brushy and somewhat uneven. In fact, the fence cannot be seen from plaintiff's side without a specific effort to do so and without "crawling through the brush." On the defendant's side there is a meadow and the new fence included all of the meadow within the defendant's property. The fence is easily seen from his side. After the fence line was erected, but before its discovery by plaintiff, she went onto the property at various times but made no specific effort to walk the boundaries or to explore her property. She was never aware that a fence had been built that encroached upon her land.

 The two theories upon which defendant claims title to the disputed land are adverse possession and acquiescence. The requirements of adverse possession are established in New Mexico by statute. Section 23-1-22, N.M.S.A.1953 (Supp.1975). We do not have to consider the application of adverse possession in this case beyond stating that there was no evidence of the payment of taxes on the disputed tract by the defendant. This is a specific requirement of our statute and the lack of that

evidence defeats defendant's claim for title whether or not any other elements of adverse possession are present. Defendant paid taxes only on the property covered by his deed.

 The theory of acquiescence upon which Martinez also relies has been treated in numerous New Mexico cases. *Sachs v. Board of Trustees of the Town of Cebolleta Land Grant*, 89 N.M. 712, 557 P.2d 209 (1976); *McBride v. Allison*, 78 N.M. 84, 428 P.2d 623 (1967); *Thomas v. Pigman*, 77 N.M. 521, 424 P.2d 799 (1967); *Woodburn v. Grimes*, 58 N.M. 717, 275 P.2d 850 (1954); and *Retherford v. Daniell*, 88 N.M. 214, 539 P.2d 234 (Ct.App.1975). These cases have firmly recognized acquiescence as a principle for settling boundary disputes in New Mexico. As stated in the *Sachs* case:

. . . It is well established in the law of this State and generally that if adjoining landowners occupy their respective tracts up to a clear and certain line (such as a fence), which they mutually recognize and accept as the dividing line between their properties for a long period of time, neither may thereafter claim that the boundary thus recognized is not the true boundary.

89 N.M. at 717, 557 P.2d at 214.

 There is no question in this case that the defendant occupied the land up to the fence line and that he recognized the fence line as the boundary. However, there are questions as to whether there was a mutuality of recognition of the fence line, and the degree of knowledge the plaintiff must have to support acquiescence. The trial court in its findings of fact stated:

12. Plaintiff knew, or should have known, of the fence line after she purchased the property in 1961 and also of the new fence constructed by the defendant in 1964.

It is undisputed that the fence was in existence for at least ten years. Nothing in the record, however, supports that portion of the finding that plaintiff "knew" of the fence line. The finding is incorrect to that extent. The issue to be determined is whether acquiescence can be found where a

party does not know of the existence of the fence or the boundary but "should have known."

In the *Sachs* decision this court referred to the "plain meaning of the words" in interpreting acquiescence, and stated that:

> . . . According to Webster's New International Dictionary of the English Language (2d ed. 1960), to "acquiesce" in something is to accept or comply tacitly or passively, without implying assent or agreement; "acquiescence" is distinguished from avowed consent on the one hand, and, on the other, from opposition or open discontent. . . .

89 N.M. at 719, 557 P.2d at 216.

This definition implies that a party must be aware of a condition to acquiesce in that condition. The *Sachs* case also quoted *Lane v. Walker*, 29 Utah 2d 119, 120, 505 P.2d 1199, 1200 (1973) as follows:

> Plaintiffs urge that there is no evidence to indulge a fiction that there was a fence mutually 'intended' to be a boundary. To this we say that the test to establish the boundary by 'acquiescence' necessarily need not be based on mutual 'intent.' 'Intent' is not synonymous with 'acquiescence' in these cases. 'Acquiescence' is more nearly synonymous with 'indolence,' or 'consent by silence,' —or a knowledge that a fence or other monuments appears to be a boundary,—but that no one did anything about it for 48 years. No one in this case did much except by invective, across the very fence that made irritants out of erstwhile neighbors, for 48 years,—until suddenly the appreciation of property values transmuted yesteryear's minimal values into objects d'art of inestimable value in the real estate market.

Again, even though the court specifically rejects the necessity of "mutual intent", it does require some knowledge as a base from which "consent by silence" will spring. The knowledge required is not that of an ultimate mental conclusion, i. e. that a fence is or is not on the true property line, however, there must at least be a knowledge that the fence is in existence.

Each case must be viewed upon its own facts. In this instance, even though the plaintiff had been on the property numerous times gathering wood, picnicking and enjoying the property, she was never aware of the existence of the fence. The particular terrain and the heavy brush involved obscured her view of the fenced boundary. There are many situations where a property owner could unknowingly be subject to the loss of lands by neighbors mistakenly relocating fences and thus expanding their holdings. This could occur because of absentee ownership, incapacity or even, as in this case, terrain which precludes reasonable ascertainment of fences and boundary lines. We cannot extend the doctrine of acquiescence to that extent in New Mexico.

We therefore reverse and remand the cause to the district court for further proceedings necessary to conform to this decision.

IT IS SO ORDERED.

SOSA and EASLEY, JJ., concur.