619 P.2d 819

Michael TRESEMER, Plaintiff–Appellant,

v.

ALBUQUERQUE PUBLIC SCHOOL DISTRICT, Canon de Carnue Grant et al., Defendants–Appellees.

No. 12936.

Supreme Court of New Mexico.

Nov. 17, 1980.

Matthews & Crider, Marian Matthews, Albuquerque, for plaintiff–appellant.

Helen L. Lopez, Albuquerque, for defendants–appellees.

OPINION

SOSA, Chief Justice.

This is an appeal from the district court's decision to apply the doctrine of acquiescence to establish plaintiff's boundary along the line where the vestiges of an old fence lay. We reverse.

Plaintiff Tresemer brought suit to quiet title to a triangular piece of property located in Tijeras Canyon, Bernalillo County, New Mexico. Defendant Land Grant contested the boundary of the property based

upon a survey establishing one of the boundaries along an old fence line. Plaintiff acquired the real property from the Shuttlesworths in 1976, who acquired it from the Durans in 1945, who acquired it from the Dominguez in 1945. Each of the deeds described the property as:

A certain tract of land in School Dist. # 7 Cedar Crest of Bernalillo County, State of New Mexico, bounded on the North by the Tijeras Canyon Arroyo, on the East by Elfigo Sanchez, on the South by the Cedro Canyon Arroyo and on the West by State Road # 10, and being a triangular piece of land, containing 2 acres more or less.

Plaintiff's Exhibits D, E and F. There was no mention of an old fence in any of these deeds. Consequently plaintiff's surveyor followed the deed descriptions and set the boundary to one-half the width of the arroyo. The district court found that the old fence described in defendant's survey constituted the boundary under the doctrine of acquiescence. Plaintiff appealed, challenging the district court's findings of fact and conclusions of law on the ground that they are unsupported by the evidence.

■ The doctrine of acquiescence has been recognized as a principle for settling boundary disputes in New Mexico for quite some time. *Sachs v. Board of Trustees, Etc.,* 89 N.M. 712, 557 P.2d 209 (1976); *McBride v. Allison,* 78 N.M. 84, 428 P.2d 623 (1967); *Woodburn v. Grimes,* 58 N.M. 717, 275 P.2d 850 (1954); *Retherford v. Daniell,* 88 N.M. 214, 539 P.2d 234 (Ct.App.1975). The requirements, as stated in the *Sachs* opinion, are that (1) adjoining landowners (2) who occupy their respective tracts up to a clear and certain line (such as a fence), (3) which they mutually recognize and accept as the dividing line between their properties (4) for a long period of time, cannot thereafter claim that the boundary thus recognized is not the true boundary.

Each case must be viewed upon its own facts. There must be a knowledge by the parties that the fence is in existence before there can be an "acquiescence" establishing it as a boundary line. *Platt v. Martinez,* 90 N.M. 323, 563 P.2d 586 (1977).

[Acquiescence] involves more than a mere establishment of a line by one party and the taking of possession by him. There must be knowledge on the part of the other party of the establishment of the line and the taking of possession by the adjoining owner, and there must be assent thereto, and this may be shown by the conduct of the second party, by his words, or even by his silence. (footnote omitted).

12 Am.Jur.2d *Boundaries* § 85 (1964). Without the requirement of knowledge or awareness of the new boundary, "[t]here [would be] many situations where a property owner could unknowingly be subject to the loss of lands by neighbors mistakenly relocating fences and thus expanding their holdings." *Platt, supra* at 325, 563 P.2d at 588.

The district court entered certain findings of fact from which it concluded that the parties, or their predecessors, had acquiesced to having the old fence be the boundary between their lands. The district court found that, when Tresemer acquired the real property in 1976, it was not fenced; that subsequent to acquiring the property, Tresemer erected a fence, the location of which was determined by the terrain of the property and soil conditions and that it was located approximately along the old fence lines; that the survey done by the Land Grant's surveyor was based in part on the location of an old barbed wire fence, not standing when the survey was done; that it is unknown when, prior to November 1973, the old barbed wire fence ceased to exist; that between 1945 when the Shuttlesworths acquired the property and 1976 when Tresemer acquired it from the Shuttlesworths, there was no evidence that the Shuttlesworths knew the barbed wire fence existed; and that at the time plaintiff purchased the subject property, there appeared vestiges of an old fence, including existing fence posts, on the subject property. These findings are not disputed and are supported by the evidence.

However, the district court's finding of fact # 26 that "[t]he old fence stood in the same location for substantially longer than thirty years" and their conclusion that "Plaintiff's predecessors in title and Defendant Canon de Carnue Grant considered the old fence lines as the true boundary lines of the subject property for more than thirty years" are unsupported by the evidence. Defendant's witnesses testified that the old fence had existed for "years and years." Each of them remembered the fence existing during their childhood, some forty–seven to fifty–two years ago. While this testimony may establish the existence of the fence for a long period of time, it is not proof that plaintiff's predecessors were aware of the fence's existence or that they silently consented to treat it as the boundary line. Since defendant is relying on the doctrine of acquiescence to establish its boundary line, it has the burden of proving each of the elements of the doctrine. There is no evidence of a mutual recognition and acceptance by the adjoining landowners that the fence was the dividing line between their property. The fact that plaintiff built a new fence along the same lines as the old fence is not proof that he acquiesced in having the fence be the boundary, especially since there is uncontroverted testimony that the fence was placed there because it was too rocky to dig postholes beyond that point.

A second indication that the predecessors had not acquiesced is the fact that the deeds describe the arroyo as the boundary. Plaintiff's surveyor, by using the midway point of the arroyo as the boundary line, followed established principles for resolving boundary disputes. The arroyo is a nonnavigable waterway and, as such, the presumption is that the boundary line between owners of lands bordering on watercourses is in the middle thread of the watercourse. 12 Am.Jur.2d *Boundaries* § 22 (1964). Where the location of boundaries are inconsistent, resort is to be had first to natural objects or landmarks and next to artificial monuments. Since the arroyo is a natural monument, it has preference over the fence which is an artificial monument.

Unless sufficient evidence is produced to show that these general principles should not apply, because the parties changed the boundaries by acquiescence or some other method, these principles will prevail.

Since defendant failed to provide sufficient evidence of acquiescence, we reverse the district court and hold that title to the subject property is quieted in plaintiff according to the description in plaintiff's survey.

IT IS SO ORDERED.

EASLEY, Senior Justice, and PAYNE, J., concur.