631 P.2d 1311

Richard D. CAUBLE and Ruth M. Cauble, Plaintiffs-Appellants,

v.

Edwin R. BEALS and Abigail M. Beals, and State of New Mexico Commissioner of Public Lands, Defendants-Appellees.

No. 13118.

Supreme Court of New Mexico.

Aug. 10, 1981.

Charlotte Greenfield, Las Cruces, for plaintiffs-appellants.

E. H. Williams, Las Cruces, for defendants-appellees.

## OPINION

EASLEY, Chief Justice.

The Caubles (Cauble) sued the Beals for ejectment from a strip of land claimed by Cauble. Beals counterclaimed for quiet title on the grounds of adverse possession and acquiescence in a common boundary. The district court quieted title in Beals on the grounds of acquiescence and estoppel. Cauble appeals. We reverse.

We discuss whether the trial court's findings of acquiescence and estoppel are supported by substantial evidence.

Cauble's land adjoins Beals' on the north boundary of Beals' property. Cauble's tract was previously owned by the State of New Mexico for many years and leased for grazing purposes to S. A. Walters until the lease expired in 1959. While in possession of the land, Mr. Walters constructed a wire fence along the south boundary of the property. Rather than placing the fence on the boundary line, he placed it several feet north of the line for the purpose of preventing adjoining landowners from tying onto the fence. The property now held by Cauble was sold in 1963 by state land contract to Hugh McMillan, of El Paso, Texas. After Mr. McMillan's death in 1969, the property was owned jointly by his widow, Merle McMillan, and the State National Bank of El Paso, as trustee, until they assigned the contract to Cauble in 1976.

Beals acquired the adjoining land in 1959 and made improvements within the disputed land beginning in 1967 and continuing to 1978. These improvements included a wood, and later rock, fence along the line of the old wire fence, and hence several feet within Cauble's land.

The elements of the doctrine of acquiescence were summarized by this Court recently in *Tresemer v. Albuquerque Public School Dist.*, 95 N.M. 143, 144, 619 P.2d 819, 820 (1980), as follows:

(1) [A]djoining landowners (2) who occupy their respective tracts up to a clear and certain line (such as a fence), (3) which they mutually recognize and accept as the dividing line between their properties (4) for a long period of time, cannot thereafter claim that the boundary thus recognized is not the true boundary.

The burden of proving the elements of acquiescence is upon the party relying upon the doctrine to establish ownership. *Tresemer, supra; Kilcrease v. Campbell*, 94 N.M. 764, 617 P.2d 153 (1980). This burden is not met unless there is a showing of long-established mutual recognition and acceptance by the adjoining landowners that the fence is the dividing line between their properties. *Tresemer, supra.*

The evidence in this case shows that the state's lessee, Mr. Walters, built the fence in 1939 and purposely placed it several feet within the state's land. There is no evidence that either Walters or the state ever accepted the fence line as the boundary. There is no evidence that the purchaser from the state, Hugh McMillan, or his wife, ever set foot on the property, observed the fence line, or discussed it with anyone.

Between 1969 and 1976 the State National Bank of El Paso was trustee of an undivided one-half interest in the property. Although the Bank has a policy of inspecting trust properties annually, the record contains evidence of only two such inspections, one in late 1975, and one in mid-1976. The Bank officer who conducted both inspections testified by deposition introduced at trial that the first inspection was cursory, consisting of a drive along a road which is approximately three-quarters of a mile from the boundary and fence in dispute. The second inspection was more thorough and the Bank officer did observe the improvements constructed on the old fence line by the Beals. Cauble purchased the property in August, 1976, and was aware of the fence and improvements at that time. In May, 1978, they learned that these improvements encroached upon their property and they so informed Beals immediately.

Reading the facts in the light most favorable to Beals, we see that the only evidence upon which recognition and acceptance of the fence location as a borderline could be predicated is far from sufficient. It consists of the agent of the Bank, which was only a trustee of a one-half interest in the land, having seen the Beals' improvements one time in 1976. The record is devoid of any evidence that any of the owners of Cauble's land prior to that time had accepted the fence line as the boundary or were even aware of the existence of the fence.

■ Even if we could stretch this evidence to support mutual acceptance, it is absurd to contend that this period, less than three years, is sufficient to constitute a long-established recognition of a fence line as the boundary.

Although no New Mexico case has established the minimum period of recognition required to acquire title by acquiescence, the cases in which the application of the doctrine has been upheld all involve a period of recognition considerably longer than the ten years required to acquire title by

adverse possession under Section 37–1–22, N.M.S.A. 1978. For example the line had been accepted for twenty-eight years in *McBride v. Allison*, 78 N.M. 84, 428 P.2d 623 (1967), for forty-five years in *Woodburn v. Grimes*, 58 N.M. 717, 275 P.2d 850 (1954), and for sixty years in *Retherford v. Daniell*, 88 N.M. 214, 539 P.2d 234 (Ct.App.1975). We conclude that three years is insufficient to constitute a long-established mutual recognition and acceptance of a boundary line. We hold that the trial court's finding that Beals acquired title by acquiescence was unsupported by substantial evidence.

■ The trial court also found that Cauble was estopped from claiming ownership to the true boundary line. The elements of estoppel are well-established:

The essential elements of equitable estoppel as related to the party estopped * * * are: (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention that such conduct shall be acted upon by the other party * * *; and (3) knowledge, actual or constructive, of the real facts * * *. As related to [the party] which claims estoppel, the essentials are: (1) lack of knowledge and of means of knowledge of the truth as to the facts in question * * *; (2) reliance upon the conduct of the party estopped * * *; and (3) action based thereon of such a character as to change its position prejudicially.

*Capo v. Century Life Ins. Co.*, 94 N.M. 373, 377, 610 P.2d 1202, 1206 (1980) (Citation omitted). Under the facts of this case as set out above, the application of estoppel was inappropriate. During the period in which Beals constructed improvements along the fence line, the record owners of Cauble's property were unaware of either the true boundary or the fence line, or both. There is not a shred of evidence in the record that Cauble, or any of his predeces-

sors, were guilty of the kind of wrongful conduct which would give rise to an estoppel. We therefore hold that the trial court's finding that Cauble was estopped from claiming ownership was unsupported by substantial evidence.

Beals' claim of laches has no merit whatsoever.

In view of our disposition of these issues, we find it unnecessary to discuss other points of error raised by the parties.

The judgment of the trial court is reversed and the cause remanded with instructions to enter judgment for Cauble.

IT IS SO ORDERED.

SOSA, Senior Justice, and PAYNE, FEDERICI, and RIORDAN, JJ., concur.