This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40606

**EILEEN R. MANDEL, PAMELA A. GONZALES, and CAROL MCBRIDE,**

Plaintiffs-Appellants,

v.

**DENISE TUCKER,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Kathleen McGarry Ellenwood, District Court Judge**

Catron, Catron & Glassman, P.A.
Richard S. Glassman
Santa Fe, NM

for Appellants

Christopher M. Grimmer, Attorney at Law, LLC
Christopher M. Grimmer
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Plaintiffs Mandel, Gonzales, and McBride filed suit against their neighbor, Defendant Tucker, claiming that Defendant's storage of a Wildwood travel trailer on her property violated the subdivision's restrictive covenants. Following a bench trial, the district court entered judgment in favor of Defendant, ruling that the covenants were ambiguous and that Defendant had prevailed on a number of equitable defenses to enforcement of the covenants. Plaintiffs appeal. We affirm.

**BACKGROUND**

**{2}**     The restrictive covenants at issue were recorded in the office of the county clerk for Santa Fe County in 1984. The relevant section, Section 13, states first that "[n]o structure of a temporary character (motor home, camper, trailer, boat, recreational vehicle, tent, shack, garage, barn, storage shed, or other outbuilding) shall be stored, used, erected or constructed on any lot without the prior written approval of the Architectural Control Committee." Section 13 then states that "[n]o campers, house trailers, motor homes, recreational vehicles, or trucks over ¾-ton shall be stored or parked on any lot except while parked in a closed garage; nor shall such vehicles be permitted to be parked permanently on any street within [the subdivision]" and that "[n]o boat of any kind may be stored on any lot except while parked in a closed garage, or back yard of reasonable size with appropriate screening or fencing."

**{3}**     Defendant Tucker moved into the neighborhood in 2018. She specifically looked for a house where she could park her travel trailer, then a Dutchman model. When she first visited the property, Defendant saw recreational vehicles, travel trailers, and boats stored on properties throughout the subdivision. Defendant parked her Dutchman trailer on her property for two years without complaint from her neighbors.

**{4}**     In May 2020, Defendant traded in her Dutchman for a larger trailer, a Wildwood. Whereas the Dutchman was 24.17 feet long, 8 feet wide, 10.25 feet high and weighed 3803 pounds, the Wildwood was 33.5 feet long, 8 feet wide, 10.83 feet high and weighed 6688 pounds. Defendant had parked the Dutchman in her driveway, perpendicular to the street. However, Defendant parked the Wildwood in her yard, parallel to the street and next to Plaintiff Mandel's property.

**{5}**     At trial, Plaintiffs did not dispute that recreational vehicles, travel trailers, and boats were stored on properties throughout the subdivision, but they argued that "[t]he Wildwood is parked in a manner that accentuates and exacerbates its visual impact, which is not the case with other or prior alleged violations or with Defendant's alleged prior RV." Defendant testified that she attempted to mitigate the visual impact by "screen[ing] off the Wildwood with trees and shrubbery," and by offering to store it in her backyard. However, Defendant's fiancé testified that storing the Wildwood in Defendant's backyard was not acceptable to Plaintiff Mandel because she could see it from her kitchen window.

**{6}**     Plaintiffs filed suit seeking (1) a declaratory judgment that Defendant's storage of the Wildwood violated Section 13 of the restrictive covenants, and (2) an injunction to prevent her from storing the Wildwood on her property in the future. The district court found that Section 13 of the covenants was ambiguous and unenforceable. While the court noted that this finding "is enough to decide the issue," the court went on to conclude that Defendant prevailed on her affirmative defenses of changed conditions, acquiescence, waiver by estoppel, laches, and good faith. Plaintiffs appealed.

**DISCUSSION**

## I.    The Appeal Is Not Moot

**{7}**    We first address Defendant's motion to dismiss this appeal as moot on the basis that Defendant has moved out of the neighborhood. An appeal is moot if "no actual controversy exists and the court cannot grant relief to the parties." *McAneny v. Catechis*, 2023-NMCA-055, ¶ 24, 534 P.3d 1007.

**{8}**    Defendant argues that because she has moved out of the neighborhood, any finding that she violated the covenants and any injunctive relief granted to prevent her from violating them in the future would have no effect. We agree that the requested injunctive relief is moot because Defendant no longer has a legal duty to comply with the restrictive covenants. *See State ex rel. Udall v. Cresswell*, 1998-NMCA-072, ¶ 28, 125 N.M. 276, 960 P.2d 818 ("An action for injunctive relief is moot only if there is no reasonable expectation that the alleged violation will recur and if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.").

**{9}**    However, we agree with Plaintiffs that an actual controversy regarding the declaratory judgment still exists. Because the underlying suit implicates residents' authority to enforce the restrictive covenant at issue, the declaratory judgment portion of the ruling below is not moot. *See McAneny*, 2023-NMCA-055, ¶¶ 23-27 (discussing a number of ways in which a case may become moot). We accordingly proceed to the merits of Plaintiffs' challenge to the district court's ruling.

## II.    Acquiescence

**{10}**    In order to prevail in this appeal, Plaintiffs face the daunting task of demonstrating that the district court erred in each of six substantive rulings that bear upon the enforceability of Section 13. Having reviewed the matter, we conclude that the district court's decision is affirmable on the basis of Defendant's affirmative defense of acquiescence, and therefore, it is not necessary to reach the remaining issues raised in this appeal.

**{11}**    "New Mexico courts have . . . recognized that a covenant should not be enforced by one who has acquiesced in prior violations of the covenant." *Heltman v. Catanach*, 2010-NMCA-016, ¶ 23, 148 N.M. 67, 229 P.3d 1239. "Acquiescence arises where a person who knows that he is entitled to enforce a right neglects to do so for such a length of time that, under the circumstances of the case, the other party may fairly infer that he has waived or abandoned his right." *Jones v. Augé*, 2015-NMCA-016, ¶ 56, 344 P.3d 989 (alteration, omission, internal quotation marks, and citation omitted). Acquiescence is "a factual issue which must be decided under the facts existing in each case." *Id.* (internal quotation marks and citation omitted).

**{12}**    A party asserting acquiescence as an equitable defense must make "a showing that the party attempting to enforce the covenant previously acquiesced to other violations of the same or similar covenants." *Myers v. Armstrong*, 2014-NMCA-051, ¶¶ 15-16, 324 P.3d 388. "Failure to enforce against minor and trivial violations does not,

of itself, constitute acquiescence." *Id.* When determining whether prior failures to enforce are sufficient to qualify as acquiescence, "[i]mportant considerations include": (1) "whether the party seeking to enforce the covenant had actual or constructive knowledge of the prior violations," (2) "whether the prior violations were temporary, occasional, or permanent," and (3) "the magnitude of the current violation as compared to prior violations." *Id.*

**{13}** Plaintiffs argue the district court erred in concluding that they acquiesced in prior violations of the covenant at issue erred because the court (1) failed to consider Plaintiffs' knowledge of other violations, (2) failed to consider the temporary nature of other violations, (3) applied an incorrect standard for assessing the magnitude of other violations, and (4) based its conclusions on Plaintiffs' failure to address prior violations, instead of Plaintiffs' intent. We review de novo the application of the law to the undisputed facts, but where we identify a challenge to the sufficiency of the evidence supporting the district court's conclusions of law, we will apply our well-known substantial evidence standard. *See Concerned Residents of Santa Fe N., Inc. v. Santa Fe Estates, Inc.*, 2008-NMCA-042, ¶ 22, 143 N.M. 811, 182 P.3d 794 (reviewing de novo the issues of waiver and acquiescence); *State v. Ryan*, 2006-NMCA-044, ¶ 16, 139 N.M. 354, 132 P.3d 1040 ("While we afford de novo review of the trial court's legal conclusions, we will not disturb the trial court's factual findings if they are supported by substantial evidence." (internal quotation marks and citation omitted)); *Las Cruces Pro. Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177 (setting out the substantial evidence standard of review).

## A.    Knowledge

**{14}** Plaintiffs first argue that the district court did not address the knowledge prong of the *Myers* test, and that Defendant's evidence failed to demonstrate Plaintiffs' knowledge of prior violations. We disagree with both contentions.

**{15}** *Myers* requires "actual or constructive knowledge of the prior violations." 2014-NMCA-051, ¶ 16. The district court's findings indicate the court considered both actual and constructive knowledge. For instance, the district court found that "there are a number of other campers, house trailers, motor homes, recreational vehicles and boats parked/stored in the subdivision, all violations of Section 13." The court found that "Plaintiffs have turned a blind eye to every other covenant violation in the subdivision," noting that "[o]ther RVs, including the one previously owned by [Defendant], were and are ignored by the property owners in the subdivision." The district court also found that Plaintiffs had actual or constructive knowledge of Defendant's Dutchman, noting that "[b]etween April 28, 2018 and May 16, 2020, the Dutchman Trailer stored on the Tucker Property was visible to the residents of the Subdivision, including Plaintiffs Mandel, Gonzales and McBride." Finally, the district court found that "[m]any Lots in the Subdivision have detached garages, sheds and/or other outbuildings located upon them, *including one or more of the Plaintiffs,*" in violation of Section 13. All of these findings implicate Plaintiffs' knowledge of other violations of Section 13 in the

neighborhood and refute Plaintiffs' contention that the district court "did not address the *Myers* knowledge consideration."

{16}    Plaintiffs also challenge the evidence supporting the knowledge prong in two ways. First, Plaintiffs assert that Defendant did not present any *testimony* to establish which violations Plaintiffs knew of. This assertion overlooks the testimony presented about the Dutchman. Second, Plaintiffs contend there is no evidence that they knew about three of the RVs shown in the twenty-one pages of photographs introduced by Defendant as Exhibit G, which show RVs, travel trailers, a boat, and other violations of Section 13 throughout the neighborhood. Even if we disregarded the photographs Plaintiffs challenge specifically, they have not argued that the remaining photographs fail to establish actual or constructive knowledge of the other RVs, trailers, and boats in the subdivision. Nor have Plaintiffs challenged that the photos fail to provide substantial evidence for the district court's finding that "[o]ther RVs, including the one previously owned by [Defendant], were and are ignored by the property owners in the subdivision." *See Stanley v. N.M. Game Comm'n*, 2024-NMCA-006, ¶ 15, 539 P.3d 1224 ("We generally require appellants contesting the sufficiency of a court's findings to marshal all of the evidence in support of the findings and then demonstrate that even if the evidence is viewed in a light most favorable to the decision reached below, together with all reasonable inferences attendant thereto, the evidence is insufficient to support the findings." (internal quotation marks and citation omitted)).

{17}    Based on the district court's findings and the evidence presented at trial, we conclude the court properly considered Plaintiffs' knowledge of prior violations. We hold that substantial evidence supported the district court's ultimate conclusion that Plaintiffs ignored other violations and "turned a blind eye to every other covenant violation in the subdivision, until [Defendant] parked her Wildwood RV in a location that bothered them."

## B.    Duration

{18}    As with the knowledge factor, Plaintiffs contend the district court failed to make any express findings as to whether the other violations were merely temporary, and that the evidence supports a finding that the prior vehicle violations of Section 13 were temporary in nature. And as with the knowledge factor, we disagree with both of Plaintiff's arguments.

{19}    The district court expressly found that "[e]xcept during certain periods of travel, Defendant Tucker stored the Dutchman Trailer on [her p]roperty between April 28, 2018 and May 16, 2020." The court also found that "[n]o one objected to the Dutchman Trailer, which was parked in the Tucker driveway for two years, and failed to give any notice to Ms. Tucker that she was not allowed to have an RV on her property." Plaintiffs have simply not addressed why the district court's findings regarding the Dutchman are insufficient to demonstrate that the prior violations were not temporary or occasional.

**{20}** Instead, Plaintiffs argue that "five of the 13 Exhibit G violations" demonstrate the temporary nature of the violations. But even disregarding the five challenged photographs, Plaintiffs have not said why the eight remaining violations do not provide evidence of longstanding violations. Although Plaintiffs argue that the photographs were only taken at a specific time, Plaintiffs have not challenged the portion of the district court's finding that Defendant observed trailers, recreational vehicles, and boats being stored throughout the neighborhood upon her first visit. Defendant specifically identified at least one of the trailers in Exhibit G as being present when she first visited the neighborhood and that from 2018 to trial she did not notice significant changes to the neighborhood. *See Autrey v. Autrey*, 2022-NMCA-042, ¶ 9, 516 P.3d 207 ("The testimony of a single witness, if found credible by the district court, is sufficient to constitute substantial evidence supporting a finding."). From this evidence, the district court could reasonably have inferred that other violations throughout the neighborhood, in addition to the Dutchman, were longstanding. On appeal, we make all such reasonable inferences in favor of the district court's judgment. *See Las Cruces Pro. Fire Fighters*, 1997-NMCA-044, ¶ 12.

**{21}** In sum, the district court's findings and conclusions demonstrate that it properly considered whether the prior violations were merely temporary or occasional, and the evidence was sufficient to support the district court's conclusion that they were not.

## C. Magnitude

**{22}** Plaintiffs also challenge the district court's application of the magnitude factor in two ways. First, Plaintiffs argue that under *Myers*, they were not required to enforce violations that had little impact on them. Plaintiffs maintain that the district court rejected this consideration and "applied [the magnitude factor] in reverse by inexplicably finding that Plaintiffs should not have failed to address violations that they didn't see, and the Court seemed to be bothered that Plaintiffs reacted differently to the Wildwood because they can see it." Second, Plaintiffs argue that none of the other RV violations had the magnitude of Defendant's Wildwood.

**{23}** We see no indication that the district court applied the magnitude factor incorrectly. The district court found that "Plaintiffs have turned a blind eye to every other covenant violation in the subdivision, until Ms. Tucker parked her Wildwood RV in a location that bothered them" and specifically that "[t]he other violations in the subdivision cannot be characterized as trivial." It also addressed the Dutchman, concluding that while "Plaintiffs[] have argued that the Dutchman Trailer is smaller than the Wildwood Trailer and, therefore, it constituted a minor or trivial violation of the Covenants for which they were not required to take action . . . no reasonable person would consider the 24 foot long, 10 foot high and 8-foot-wide Dutchman Trailer a 'minor' or 'trivial' violation of that section. In other words, Section 13 would apply to *all* trailers, whether they are 24 feet long or 33 feet long." In light of the nontrivial nature of these previous violations, the district court concluded that "Plaintiffs have acquiesced in prior violations of the Covenants and, therefore they cannot enforce Section 13 against Defendant Tucker."

These findings demonstrate that the district court correctly applied the law by considering whether prior violations were trivial or not.

{24}    As for Plaintiffs' contention that none of the other trailers, RVs, or boats in the subdivision had the magnitude of the Wildwood, Plaintiffs challenge the "last five photos in the Def. Ex. G 1-17 group," arguing that the vehicles shown have "minimal visual impact," either due to size or location. Plaintiffs make the same suggestion with respect to the Dutchman, i.e., that it constituted a minor violation in comparison to the Wildwood because the Dutchman was parked perpendicular to the street. They argue that "[t]he Wildwood is parked parallel to the street, and . . . [i]n the evidentiary photos, it visually blocks a large portion of [Defendant's] house."

{25}    Despite their arguments, Plaintiffs have not attacked with specificity the district court's finding that "no reasonable person would consider the 24 foot long, 10 foot high and 8-foot-wide Dutchman Trailer a 'minor' or 'trivial' violation of that section," or its finding that "[t]he other violations in the subdivision cannot be characterized as trivial." *See Lujan v. Reed*, 1967-NMSC-262, ¶ 18, 78 N.M. 556, 434 P.2d 378 (holding that questions of reasonableness are questions of fact to be determined by the fact-finder); *Stanley*, 2024-NMCA-006, ¶ 15 (same). Making all inferences in support of the verdict, we cannot say that the difference in length was significant enough to warrant reversal of the district court, or that the relative visibility of the other violations of Section 13 was so greatly disparate compared to the Wildwood as to merit reversal of the district court's reasonableness judgment. Therefore, we hold that substantial evidence supported the district court's conclusion that the prior violations were not trivial.

## D.    Intent

{26}    We briefly address Plaintiffs' final argument that "recent case law posits that there is no waiver by acquiescence in the absence of intent to waive" and that "[t]here is no evidence in the record here that Plaintiffs intended to waive the violation that is the Wildwood; Defendant's acquiescence argument is premised on lack of enforcement for prior violations, rather than evidence of Plaintiffs' intent." In support of their argument, Plaintiffs cite only a single, nonprecedential opinion from this Court, *Tessier v. Lambert Enterprises, Inc.*, Nos. 31717, 31992, mem. op. ¶ 11 (N.M. Ct. App. Mar. 2014) (nonprecedential). In *Tessier*, we stated that a party may waive its right to enforce a covenant against liquor sales, but that "[w]aiver of enforcement rights also requires an intention to waive." *Id.* Although the Court noted the acquiescence standard, the Court's analysis centered on waiver. This Court has previously noted a difference between waiver and acquiescence. *See Salas v. Mountain States Mut. Cas. Co.*, 2007-NMCA-161, ¶ 26, 143 N.M. 113, 173 P.3d 35 (ruling that a "waiver is the intentional relinquishment or abandonment of a known right" whereas "to acquiesce is to give implied consent" (internal quotation marks and citations omitted)), *aff'd*, 2009-NMSC-005, 145 N.M. 542, 202 P.3d 801. Acquiescence does not have an intent requirement. *See Platt v. Martinez*, 1977-NMSC-026, ¶ 7, 90 N.M. 323, 563 P.2d 586 ("'Intent' is not synonymous with 'acquiescence' . . . '[a]cquiescence' is more nearly synonymous with 'indolence,' or 'consent by silence,'—or a knowledge that a fence or other monuments

appears to be a boundary,—but that no one did anything about it for 48 years."). Because *Tessier* dealt with waiver and is nonprecedential, we decline to rely on it here.

**CONCLUSION**

**{27}**   We affirm.

**{28}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**KATHERINE A. WRAY, Judge**